# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |  |  |
|---|---|---|---|
| ANTONIO SMITH and | : |  |  |
| VERONICA A. HORNBUCKLE | : | C.A. No. | 05-140 |
|  | : |  |  |
| Plaintiffs, | : |  |  |
|  | : |  |  |
| v. | : | JURY TRIAL DEMANDED |  |
|  | : |  |  |
| DELAWARE FIRST FEDERAL | : |  |  |
| CREDIT UNION | : |  |  |
|  | : |  |  |
| Defendant. | : |  |  |

**DEFENDANT, DELAWARE FIRST FEDERAL CREDIT UNION'S, OPENING BRIEF
IN SUPPORT OF THE MOTION TO DISMISS**

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Seth J. Reidenberg, Esquire (No. 3657)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6706

*Attorneys for Defendant Delaware First
Federal Credit Union*

Dated: March 30, 2005

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS ...........................................................1

SUMMARY OF THE ARGUMENT .........................................................................2

STATEMENT OF FACTS .........................................................................................3

ARGUMENT .............................................................................................................4

CONCLUSION ..........................................................................................................6

i

## TABLE OF CITATIONS

**Cases**                                                                          **Page**

*Development Fin. Corp. v Alpha Hous. & Health Care, Inc.,*
    54 F. 3d 156 (3d Cir. 1995)...................................................................5

*Gould Elects., Inc. v. United States,*
    220 F.3d 169 (3d Cir. 2000)................................................................4

*J&D Home Improvement, Inc. v. Basement Doctor, Inc.,*
    2004 U.S. App. LEXIS 1008 (3d Cir. 2004) .....................................4

*Ketterson, et al. v. Wolfe, et al.,*
    2001 Dist. LEXIS 12535 (D. Del. 2001) ........................................4,5

*Kopicko v. Department of Servs. for Children, Youth & Their Families,*
    2004 U.S. Dist. LEXIS 16130 (D. Del. 2004) ..................................4

**Statutes**

Fed. R. Civ. P. 12(b)(1)..............................................................................2,3,4

28 U.S.C. §§ 1331.........................................................................................1,5

28 U.S.C. § 1332...........................................................................................1,5


**Miscellaneous**

14th Amendment of the United States Constitution ....................................1,5

## NATURE AND STAGE OF PROCEEDINGS

On or about March 10, 2005, Plaintiffs filed this action ("Complaint") against the

Defendant, Delaware First Federal Credit Union ("DFFCU"). DFFCU was served on or about

the same day - March 10, 2005. In lieu of filing an Answer to the Complaint, DFFCU hereby

moves this Honorable Court for an Order dismissing Plaintiffs' Complaint pursuant to Fed. R.

Civ. P. 12(b)(1). This Court lacks subject matter jurisdiction because there is no diversity of

citizenship between the parties nor do the Plaintiffs raise a federal question in the Complaint.

WP3:1098753 1                                          61809 1007

## SUMMARY OF THE ARGUMENT

Under either 28 U.S.C. §§ 1331 or 1332, this Court lacks subject matter jurisdiction to hear this case. Although in Paragraph 1 of Plaintiffs' Complaint Plaintiffs state, "This law suit is a cause of action of the Fourteenth Amendment of the United States Constitution (Due Process), Breach of Contract (Breach of Duty), Intentional Misrepresentation (Fraud) and Intentional Emotional Distress (Pain and Suffering)", there are no allegations, claims or facts in the Complaint referencing the 14th Amendment. (See Complaint attached as Exhibit A hereto) The only claims in the Complaint are state law claims. Furthermore, Plaintiffs , on the civil cover sheet, base jurisdiction on diversity of citizenship, not federal question. As a result, even under the most liberal reading of the Complaint, this Court has no jurisdiction to hear this action.

WP3:1098753 1                                                                 61809 1007

## STATEMENT OF FACTS[1]

Plaintiffs are members of DFFCU and have a debit card through DFFCU. Plaintiffs allege that Hertz Corporation debited their account without prior authorization. (¶ 8 of the Complaint). Plaintiffs allege that they informed DFFCU not to authorize Hertz Corporation to debit their account at DFFCU. (¶ 4 of the Complaint). Plaintiffs were allegedly informed that the account was "flagged" and, as a result, it was their impression that no transactions would be permitted on their account by Hertz. (¶ 5-6 of the Complaint).

On or about February 11, 2005, Hertz debited Plaintiffs' account in the amount of $5,652.95. (¶ 8 of the Complaint). Plaintiffs were allegedly unaware of the account activity until February 25, 2005 when they were unable to withdraw funds from their account. (¶ 11 of the Complaint). Plaintiffs disputed the debit and were instructed by employees of DFFCU to write a letter disputing the Hertz debit. (¶ 13 of the Complaint). Plaintiffs allege that employees of DFFCU took the dispute letter but could not do anything to assist them.

Plaintiffs allege that they relied on DFFCU's statement that the account was flagged in December 2004 and that DFFCU intentionally and knowingly misrepresented certain facts and, as a result, Plaintiffs were seriously harmed. (¶ 17 of the Complaint). Plaintiffs' Complaint sets forth three (3) causes of action based on DFFCU's alleged actions: Count I - Breach of Contract; Count II - Fraud/Intentional Misrepresentation; and Count III - Intentional Emotional Distress.

---

[1] The facts alleged in the Complaint are, for purposes of this motion only, assumed to be true as required by the standard for determining motions to dismiss under Fed. R. Civ. P. 12(b)(1).

WP3:1098753 1                                                                61809 1007

**ARGUMENT**

There are two types of Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction that a defendant can assert. One is a facial challenge to the Court's jurisdiction. *Ketterson, et al. v. Wolfe, et al.*, 2001 Dist. LEXIS 12535, at *9 (D. Del. 2001)[2] *citing Gould Elects., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). The other type is a factual challenge to the Court's subject matter jurisdiction, which contends that the allegations in the complaint establishing jurisdiction are not sufficiently supported by the facts. *Id.* When a defendant asserts a facial challenge to jurisdiction, a court must accept the complaint's allegations as true. *J&D Home Improvement, Inc. v. Basement Doctor, Inc.*, 2004 U.S. App. LEXIS 1008, at **4 (3d Cir. 2004)[3]; *Kopicko v. Department of Servs. for Children, Youth & Their Families*, 2004 U.S. Dist. LEXIS 16130 at *6 (D. Del. 2004)(holding that a challenge to subject matter jurisdiction requires the court to ask whether the complaint on its face is sufficient to invoke the court's jurisdiction)[4].

Even if this Court, as it must, assumes all of the factual allegations are true, the allegations are not sufficient to establish this Court's jurisdiction. Plaintiffs have not asserted any federal question nor is there any diversity of citizenship between the parties. Therefore, this Court has no jurisdiction to hear this case.

In the Complaint, Plaintiffs include a section entitled "Jurisdiction". Plaintiffs allege: "That the Plaintiffs residence is located at 27 Gershwin Circle, Newark, Delaware. That the Defendants (sic) is a Federal Bank Credit Union doing business at 1815 Newport Gap Pike Wilmington, Delaware. That this court has jurisdiction and therefore will be heard before this

---

[2] Attached hereto as Exhibit B.
[3] Attached hereto as Exhibit C.
[4] Attached hereto as Exhibit D.

4

honorable court." (¶ 3 of the Complaint). While this declaration alone may not be fatal to jurisdiction, Plaintiffs assert nothing more to support this Court's jurisdiction. In fact, although Paragraph 1 of the Complaint states that the lawsuit is for alleged violations of the due process clause of the 14[th] Amendment of the United States Constitution, Plaintiffs never actually assert such a claim.

28 U.S.C. § 1331 grants the district courts original jurisdiction over civil actions that arise under the Constitution, laws or treaties of the United States. In reviewing Plaintiffs' Complaint, Plaintiffs' assert no violation of a federal statute or any Constitutional rights by DFFCU against Plaintiffs. The only claims Plaintiffs have asserted are state law claims, therefore, this Court lacks jurisdiction to hear the case pursuant to 28 U.S.C. § 1331.

28 U.S.C. § 1332 does grant district courts jurisdiction to hear disputes between citizens of different States; however, "[t]o have jurisdiction of an action containing only state law claims, there must be a complete diversity [of citizenship] between all plaintiffs and all defendants." *Ketterson* 2001 Dist. LEXIS 12535 at *7 *quoting Development Fin. Corp. v Alpha Hous. & Health Care, Inc.*, 54 F. 3d 156, 158 (3d Cir. 1995). It is clear that there is no diversity of citizenship between the parties. Both parties are Delaware citizens. Plaintiffs reside in Newark, Delaware. DFFCU is a credit union based in Delaware and operating in Delaware. (¶ 3 of the Complaint). As a consequence, jurisdiction cannot be based on 28 U.S.C. § 1332.

Plaintiffs' Complaint, even accepting all of the allegations as true, fails to set forth any basis to invoke this Court's jurisdiction. There is neither a federal question at issue or diversity of citizenship between the parties. Because this Court does not have jurisdiction, the complaint must be dismissed.

5

## CONCLUSION

For all of the foregoing reasons, DFFCU respectfully requests that the complaint

be dismissed in its entirety.

_____

Seth J. Reidenberg, Esquire (No. 3657)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801

P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone:  (302) 571-6706
Facsimile:   (302) 576-3442
E-Mail:  sreidenberg@ycst.com

*Attorneys for Defendant Delaware First
Federal Credit Union*

Dated:  March 30, 2005

WP3:1098753 1                                                    61809 1007

EXHIBIT A

JS 44 (Rev. 11/01)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
*Veronica A Hornbuckle*

**(b)** County of Residence of First Listed Plaintiff (302) 875-7301
(EXCEPT IN U.S. PLAINTIFF CASES)

*Antonio Smith*
*(302) 275-7301*

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
*27 Gershwin Circle*

## DEFENDANTS
*Delaware First Credit Union*
*1815 Newport Gap Pike*
*Wilmington*

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☒ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant
☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

*US citizens*

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☒ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☒ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): *6.53/F.8 paragraph(s)*

Brief description of cause: *Breach of Duty + Fraud, FTC 6.5, 84/6525*

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND$ *250,000.00*

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*3/10/05*  (See instructions):  JUDGE _____  DOCKET NUMBER _____

DATE *3/10/05*

SIGNATURE OF ATTORNEY OF RECORD *Antonio Smith / Veronica A. Hornbuckle*

### FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

ANTONIO SMITH and
VERONICA A. HORNBUCKLE

Vs.

DELAWARE FIRST
FEDERAL CREDIT UNION

_____/

CIVIL COMPLAINT

CASE NO.    0 5 - 1 4 0

## CAUSE OF ACTION CIVIL COMPLAINT

## AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiffs sue and file this civil complaint for their cause of action against the

Defendants Alleges and state as follows;

## ALLEGATIONS COMMON TO ALL CAUSE OF ACTION

1. This law suit is a cause of action for violation of the Fourteenth Amendment of the United

States Constitution (Due Process), Breach of Contract (Breach of Duty),Intentional Misrepresentation

(Fraud) and Intentional Emotional Distress (Pain and Suffering).

2. That the Plaintiffs sue the Defendants for $250,000.00 in U.S. Currency for Compensatory

Damages and Punitive Damages to be determine at jury trial.

## II. JURISDICTION

3. That the Plaintiffs resident is located at 27 Gershwin Circle Newark, Delaware. That the

Defendants is a Federal Bank Credit Union doing business at 1815 Newport Gap PikeWilmington,

Delaware That this court has jurisdiction and therefore will be heard before this honorable court

1

### III . GENERAL ALLEGATIONS

4   On or around December 28, 2004 the Plaintiffs went to fill out legal documents to not authorize Hertz Corporation to ceased any debit transaction on card based being replace by another card

5.  The representative had the Plaintiffs to sign the Legal documents and told them that the account was flag and everything was ok.

6   The Plaintiffs left under the impression that there should not be any transactions allowed on the debit card on that particular debit card from this merchant.

7.  From December 29, 2004 thru January 2005, there was no transaction from said merchant HertzCorp

8.  On or around February 11, 2005 merchant Hertz rental car submit to the Plaintiff debit card in the Amount of $5652.95 with out the Plaintiffs authorization or knowledge. See Exhibit- A

9   Delaware First Federal Credit Union never inform or sent any notices of this extremely large transaction amount to the Plaintiffs and intentionally and knowingly cover up the transaction  Plaintiffs did not have said amount in the account and was unaware of what had happened.

10 On or around  February 24, 2005 the Plaintiffs went to make a withdrawal from said account with debit card and was advised to see financial institution. See Exhibit-B

11 On or around February 25, 2005 the Plaintiffs went to cash a check and was inform by the bank teller that the account was overdrawn by $5,652 95  The Plaintiffs was immediately in shock and was traumatize because the Plaintiffs had written previous checks to pay some bills.

2

12 The Plaintiffs spoke with two of the Representatives in which one of the representative was named Pat. The Plaintiffs asked the representative who gave the bank authorization to allowed the transaction to go threw and how can they debit a consumer account when $5,652.95 was never in the account. The representatives did not give any explanation except that the account was flag and should not have been debited to the Plaintiffs checking account in the amount $5,652.95. See Exhibit-C

13 The Defendants told the Plaintiffs to write a dispute letter. The Plaintiff ask the Defendants, how can you allow a debit transaction to a checking account of a large sum of $5,652.95 dollars against the Plaintiffs checking account and not a credit card. The Defendants assured the Plaintiffs that the problem would be immediately corrected. The Defendants told the Plaintiffs that they would need a dispute letter from the Plaintiffs

14 On or around February 28, 2004 the Plaintiffs gave a copy of the dispute letter to the Defendants for the dispute. The Plaintiffs inform the Defendants that they would not be responsible for any return checks or over draft fees. The Defendants took the dispute copy and told the Plaintiffs that they could not do anything for the Plaintiffs. The Plaintiffs then asked the Defendants what was the purpose of taking out their time to type up the dispute letter if they knew it would not do any good. See Exhibit-D

15 The Plaintiffs believed and relied on the Defendants statements that the account was indeed flag back in December 28, 2004 and that the Defendants would do everything to help and protect the

3

16. The Plaintiffs continue to receive NSF return checks notices and over draft fees. The Plaintiffs became sick and began to have migraine headaches worrying how the bills was going to be paid because of what the Defendants had done.

17 Because the Defendants intentionally and knowingly misrepresented the facts about the Plaintiffs checking account, the Plaintiffs was seriously harmed. The Plaintiffs had no knowledge of any large amount to the debit account in the amount of $5,652.95. The Defendants had superior knowledge

## CAUSES OF ACTION

## COUNT -I

## BREACH OF CONTRACT

The Plaintiffs hereby incorporates each and every allegation and make part hereof Paragraphs 1-17.

18 The Defendants had a fiduciary obligation to the Plaintiffs to protect their account with care and to not allow any transaction that were not given any authorization. The Defendants never gave the Plaintiffs any notice of any kind

19 That the Plaintiffs did everything to prevent injustice to their account by immediately contacting the Federal Credit Union

20 The Defendants fail to perform as required by Federal Laws. The Defendants did not use reasonable care to protect the Plaintiffs.

21 Because of the Breach of Contract the Defendants have caused the Plaintiffs considerable Financial harm and hardship

4

## COUNT- II

## FRAUD

## INTENTIONAL MISREPRESENTATION

The Plaintiffs hereby incorporates each and every allegation and make a part hereof

Paragraphs 1-21

22  The Defendants was aware  or should have been aware of the fact that the business

Transaction was not authorize by the Plaintiffs

23  The Defendant knowingly and intentionally made the following misrepresentations, that

The account was indeed flag and the merchant Hertz Rental Corporation was not able to debit

The Plaintiffs account

24  The Plaintiffs had no reason not to believe the Defendants and relied on the Defendants statements

after all the Defendants had superior knowledge. The Plaintiffs had no way of what the Defendants

had done

25  Because of the Statements and acts the Defendants incurred harm and financial hardship. The

Plaintiffs have checks bouncing and over draft fees and gotten behind with their creditors

5

## COUNT III

### INTENTIONAL EMOTIONAL DISTRESS

Plaintiffs hereby reallege and incorporate each and every allegations and make a part hereof

Paragraphs hereof 1-25.

26. The Defendants continue to mislead the Plaintiffs that the account would taken care of and to

bring a dispute letter, only to continue to mislead the Plaintiffs.

27 Because of the false statements to the Plaintiffs and allowing a fraudulent debit on the Plaintiffs

account the Plaintiffs was seriously harmed.

28. The Defendants intentionally and knowingly disburse $5,652.95 and knew that the Plaintiffs

never had said funds in account

29 The Defendants never sent any notices to inform the Plaintiffs of any kind of large transaction

in the amount of $5,652 95.

30 The Plaintiffs was harmed from this fraudulent transaction. The Plaintiffs had many sleepless

Nights, anxiety and migraine headaches from trying to continue to pay their bills

6

WHEREFORE, the Plaintiff prays that the honorable court will grant a Jury Trial on the

Merit of this case  The Plaintiffs are seeking interest according to law; cost and fees incurred within;

Compensatory Damages and Punitive Damages to deter the Defendants from this kind of

Unprofessional behavior towards another consumer and / or customer in the future  This law suit

Is in the public interest

## PLAINTIFFS DEMAND JURY TRIAL

Respectfully Submitted,


Veronica A  Hornbuckle


Antonio Smith

7

*Exhibit -A*

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
Fee Assessed - NON SUFFICIENT FUNDS (STMT KEY = 00001000)

| 02/23/2005 | 02/22/2005 | 10:27 | 991 | 570 | 9010 | | 548 | (30.00) | (50.00) |
|---|---|---|---|---|---|---|---|---|---|

Fee Assessed - NON SUFFICIENT FUNDS (STMT KEY = 00001000)

| 02/23/2005 | 02/22/2005 | 10:27 | 997 | 570 | 9010 | | 550 | (30.00) | (170.00) |

Fee Assessed - NON SUFFICIENT FUNDS (STMT KEY = 00001000)

| 02/24/2005 | 02/11/2005 | 06:59 | 934 | 371 | 9010 | 608535 | (5,532.95) N | (5,652.95) F |

Electronic Withdrawal - HERTZ RENT-A-CAR MIAMI FL27763019 (STMT KEY = 88888888)   Regulation E

| 02/24/2005 | 02/11/2005 | 06:59 | 935 | 570 | 9010 | | (30.00) | (5,682.95) |

Fee Assessed - NON SUFFICIENT FUNDS (STMT KEY = 00001000)

| 02/24/2005 | 02/23/2005 | 09:12 | 996 | 570 | 9010 | | 654 | (30.00) | (5,712.95) |

Fee Assessed - NON SUFFICIENT FUNDS (STMT KEY = 00001000)

| 02/25/2005 | 02/25/2005 | 13:52 | 997 | 630 | 5012 | 27636080 | 749.17 | (4,963.78) F |

ACH Deposit - 01GENERAL MOTORS (STMT KEY = 00001000)   Regulation E

Exhibit-B

 **PNCBANK**

SAVE $$$ AT WAWA
NO ATM SURCHARGE
BANKS FEES MAY APPLY

022405  0638PM  PNb126
XXXXXXXXXXXX7007

j2 S DUPONT HY
NEW CASTLE     DE
        $.00   SEQ#7331
    INVALID CARD.
  PLEASE CONTACT YOUR
FINANCIAL INSTITUTION

**50¢ Off**
*Any Wawa*
*Hot-To-Go*
*Bowls*
Expiration 3 31/05

$\mathcal{E} \times h.b.t - C$

**Acct# 80457**

**Member** VERONICA A HORNBUCKLE, 1540345
**Current Balance** -4,963.78

2/25/2005 Page 1 of 1

| Tran Date | Eff Date | Time | Seq | TX# | Tlr# | Trace Nbr | Draft/Auth # | Div Paid | Bal Change | New Balance Ind |
|---|---|---|---|---|---|---|---|---|---|---|
| 02/23/2005 | 02/22/2005 | 10:27 | 990 | 570 | 9010 | | 662 | | (30.00) | (60.00) |
| Fee Assessed - NON SUFFICIENT FUNDS (STMT KEY = 00001000) | | | | | | | | | | |
| 02/23/2005 | 02/22/2005 | 10:27 | 991 | 570 | 9010 | | 548 | | (30.00) | (90.00) |
| Fee Assessed - NON SUFFICIENT FUNDS (STMT KEY = 00001000) | | | | | | | | | | |
| 02/23/2005 | 02/22/2005 | 10:27 | 992 | 570 | 9010 | | 650 | | (30.00) | (120.00) |
| Fee Assessed - NON SUFFICIENT FUNDS (STMT KEY = 00001000) | | | | | | | | | | |
| 02/24/2005 | 02/11/2005 | 08:59 | 994 | 371 | 9010 | 608535 | | | (5,532.95) | (5,652.95) E |
| Electronic - Withdrawal - HERTZ RENT-A-CAR MIAMI FL27763919 (STMT KEY = 99990990) | | | | | | | | | | Regulation E |
| 02/24/2005 | 02/11/2005 | 08:59 | 995 | 570 | 9010 | | | | (30.00) | (5,682.95) |
| Fee Assessed - NON SUFFICIENT FUNDS (STMT KEY = 00001000) | | | | | | | | | | |
| 02/24/2005 | 02/23/2005 | 09:12 | 996 | 570 | 9010 | | 554 | | (30.00) | (5,712.95) |
| Fee Assessed - NON SUFFICIENT FUNDS (STMT KEY = 00001000) | | | | | | | | | | |
| 02/24/2005 | 02/25/2005 | 18:52 | 997 | 590 | 9012 | 27695090 | | | 749.17 | (4,963.78) E |
| ACH Deposit - OIGENERAL MOTORS (STMT KEY = 00000100) | | | | | | | | | | Regulation E |

$\mathcal{E}xh_ib_it \ -D$

Ms. Veronica A. Hornbuckle
Mr. Antonio Smith
27 Gershwin Circle
Newark, Delaware 19702

February 28, 2005

Delaware First
Federal Credit Union
1815 Newport Gap Pike
Welmington, De 19808-6241

Re: In re: Veronica A. Hornbuckle
Antonio Smith
Acct no. 80457, 88708 and 88351

Dear Management,

We are disputing the transaction that took place on February 11, 2005 by merchant Hertz car rental Corporation. Hertz rental Corporation was aware and was told not to use the account because the card was misplaced and we had put a flag on the card on December 28 ,2004.

We are disputing this transaction because no one from Hertz"Corporation did not get any authorization pertaining to a bill or debit amount of $5,652.95 to be debit to our account. This is fraud by Hertz rental car and by the Delaware First Credit Union by allowing this merchant to debit this account on February 11, 2005 for the amount $5,652.95. This transaction should have never been approved by Delaware First Credit Union.

Please be advised that we will not be responsible for any over drafts or return items on this account. **PLEASE GOVERN YOURSELF ACCORDINGLY.**

Very Truly Yours,

Veronica A. Hornbuckle

Antonio Smith

# CERTIFICATION

I hereby certify that this is a true and correct copy of the foregoing to the Defendants

Federal Bank Credit Union located at 1815 Newport Gap Pike Wilmington, Delaware and to the

honorable courts on this ___/0___ day of __March__ 2005.

Veronica A. Hornbuckle
27 Gershwin Circle
Newark, Delaware 19702

Antonio Smith
27 Gershwin Circle
Newark, Delaware 19702

8

# EXHIBIT B

85 of 139 DOCUMENTS

**QUENTIN KETTERSON, et al., Plaintiffs, v. DOUGLAS H. WOLF, et al.,
Defendants.**

**Civil Action No. 99-689-JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2001 U.S. Dist. LEXIS 12535*

**August 14, 2001, Decided**

**DISPOSITION:** [*1] Defendants Douglas H. Wolf's and Richard G. Buckingham's Motion to Dismiss for Lack of Diversity Jurisdiction (D.I. 75) GRANTED. Defendant W. Lawrence Patrick's Motion to Dismiss (D.I. 79) GRANTED. Motion of Defendants Wolf and Buckingham to Compel Discovery (D.I. 73) DENIED AS MOOT.

**LexisNexis(R) Headnotes**

**COUNSEL:** Charlene Davis, Esquire, and Richard L. Abbott, Esquire, THE BAYARD FIRM, Wilmington, Delaware, for Plaintiffs.

Z. Lance Samay, Esquire, Of Counsel, Morristown, New Jersey, for Plaintiffs.

R. Franklin Balotti, Esquire, and Catherine G. Dearlove, Esquire, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware, for Douglas H. Wolf, Defendant.

Richard J. Idell, Esquire, Of Counsel, IDELL, BERMAN & SEITEL, San Francisco, California, for Douglas H. Wolf, Defendant.

R. Franklin Balotti, Esquire, and Catherine G. Dearlove, Esquire, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware, for Richard G. Buckingham, Defendant.

Richard B. Cooper, Esquire, and Erik W. Kvam, Esquire, Of Counsel, COOPER, BROWN & BEHRLE, P.C., New York, New York, for Richard G. Buckingham, Defendant.

Andre G. Bouchard, Esquire, and Joel Friedlander, Esquire, BOUCHARD MARGULES & FRIEDLANDER, Wilmington, [*2] Delaware, for W. Lawrence Patrick, Defendant.

Robert L. Fila, Esquire, Of Counsel, Columbia, Maryland, for W. Lawrence Patrick, Defendant.

**JUDGES:** JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** JOSEPH J. FARNAN, JR.

**OPINION:**

### MEMORANDUM OPINION

August 14, 2001
Wilmington, Delaware

### FARNAN, District Judge.

Presently before the Court is Defendants Douglas H. Wolf's and Richard G. Buckingham's Motion to Dismiss for Lack of Diversity Jurisdiction (D.I. 75), and Defendant W. Lawrence Patrick's Motion to Dismiss (D.I. 79), pursuant to *Rule 12(b)(1) of the Federal Rules of Civil Procedure.* For the reasons discussed below, the Court will grant the motions.

### BACKGROUND

The Amended Complaint filed in this action alleges the following facts. Plaintiff Quentin Ketterson ("Mr. Ketterson") is an investment banker based in New Jersey who is engaged in the business of facilitating transactions in the broadcast and computer software industries. Mr. Ketterson created Plaintiff Triangle Broadcasting

Company, L.L.C. ("Triangle")(collectively "Plaintiffs"), which is a Delaware limited liability company, in the fall of 1995 "for the express purpose of specializing [*3] in acquiring control of, or in any way facilitating the sale of, the stock of broadcasting companies, which own groups of TV and/or radio stations." Defendant Douglas H. Wolf ("Mr. Wolf"), from San Francisco, California, and Defendant Richard G. Buckingham ("Mr. Buckingham"), from New York, are both attorneys and businessmen who specialize in "facilitating tax-driven business transactions." Defendant W. Lawrence Patrick ("Mr. Patrick") is a Maryland attorney who owns Patrick Communications Corporation, a radio and television station brokerage firm (the individual defendants are collectively "Defendants").

Mr. Ketterson and Mr. Patrick, who were introduced by a mutual friend in early 1995, agreed to become equal partners in a business of "soliciting broadcast station sellers, buyers and brokers." In July of 1995, as a result of their initial work on this venture, Mr. Ketterson and Mr. Patrick were introduced to Mr. Buckingham, who at the time was affiliated with Mr. Wolf in an unincorporated association. Mr. Ketterson and Mr. Patrick were impressed with some of Mr. Buckingham's business proposals and sought to work with him in the future. In anticipation of working with Mr. Buckingham [*4] and Mr. Wolf, on or about August 1, 1995, Mr. Ketterson and Mr. Patrick executed a letter agreement establishing a partnership in which they would equally share any compensation earned as a part of their dealings with Mr. Buckingham and Mr. Wolf. At the end of October 1995, after several weeks of frequent communications among all four individuals, Mr. Ketterson and Mr. Patrick agreed with Mr. Buckingham and Mr. Wolf to formalize their business relationship by executing an agreement to create Triangle, a Delaware limited liability company, in which each individual would have a 25% interest. According to the terms of the agreement, Triangle's existence was effectuated on November 20, 1995. The purpose of Triangle was to "pursue and facilitate broadcast station sales transactions."

During the ensuing months, Mr. Ketterson and Mr. Patrick began working on Triangle's behalf, when, in February of 1996, they learned that Mr. Buckingham and Mr. Wolf had recently completed a $ 165 million broadcast station stock sale separate from Triangle's business operations. Mr. Ketterson and Mr. Patrick continued to learn of other independent business activities in which Mr. Buckingham and Mr. Wolf had [*5] been engaging, and the controversy among the four escalated in July of 1996 when Mr. Wolf expressed reluctance "to honor his contractual commitment to share

equally Triangle's earnings with [Mr. Ketterson and Mr. Patrick]."

Despite their concerns about Mr. Buckingham and Mr. Wolf, Mr. Ketterson and Mr. Patrick continued to work in securing transactions for Triangle, and they regularly sent Mr. Buckingham and Mr. Wolf update letters to detail their progress. In response to one of these letters, in August of 1996, Mr. Buckingham and Mr. Wolf informed Mr. Ketterson and Mr. Patrick of their desire to "redefine" their relationship. Rather than resisting and possibly irreparably damaging their relationship with Mr. Buckingham and Mr. Wolf, Mr. Ketterson and Mr. Patrick drafted a modification of their agreement reducing their respective share of Triangle's profits.

In October 1996, Mr. Ketterson received a copy of a letter authored by Mr. Patrick that indicated that Mr. Ketterson had been completely excluded from a number of completed and pending Triangle transactions. On November 11, 1996, Mr. Ketterson received a letter from Mr. Buckingham and Mr. Wolf in which the two "purported to [*6] 'withdraw' from Triangle retroactively to August 1996." Mr. Ketterson quickly objected in writing to "the impropriety of the action of [Mr. Buckingham and Mr. Wolf] in totally usurping Triangle's business and circumventing the LLC Agreement." In December 1996, Mr. Buckingham and Mr. Wolf informed Mr. Patrick that he could maintain his financial relationship with them, and could be indemnified by them, only if Mr. Patrick agreed to (1) withdraw from Triangle, (2) accept $ 140,000 as his share of earnings for all of his contributions to Triangle to that date, (3) exclude Mr. Ketterson from any future broadcast station transaction, and (4) deprive Mr. Ketterson of any monies owed to him and of any legal rights that he may have possessed. Mr. Patrick eventually sent a letter to Mr. Ketterson on December 24, 1996, that expressed his desire to formally end his business relationship with Mr. Ketterson and stating that he would continue doing business with Mr. Buckingham and Mr. Wolf. On May 27, 1997, Mr. Ketterson authored a letter to Mr. Buckingham and Mr. Wolf which demanded an accounting of all of Triangle's profits, but Mr. Ketterson received no response. His follow-up phone calls in [*7] late 1997 and early 1998 also went unanswered.

On November 10, 1998, Plaintiffs (Mr. Ketterson and Triangle) filed an action in the United States District Court for the District of New Jersey. (D.I. 88 at 1). Plaintiffs' Amended Complaint asserts claims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) breach of fiduciary duties, (4) conversion, (5) oppressive conduct, (6) fraud and

conspiracy to defraud, (7) unjust enrichment, and (8) tortious interference with business opportunities, and it also demands an accounting of all of Triangle's profits. On October 14, 1999, the New Jersey court transferred the action to this Court because of improper venue. (D.I. 88 at 2). Defendants filed the instant motions on March 10, 2000, seeking **dismissal** of Plaintiffs' Amended Complaint due to lack of **subject matter jurisdiction.** (D.I. 88 at 2).

## DISCUSSION

In order for the Court to have **subject matter jurisdiction** of an action containing only state law claims, there must be "complete diversity [of citizenship] between all plaintiffs and all defendants." *Development Fin. Corp v. Alpha Hous. & Health Care, Inc., 54 F.3d 156, 158 (3d Cir. 1995).* [*8] The burden to establish jurisdiction is on the plaintiff. *Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 128 L. Ed. 2d 391, 114 S. Ct. 1673 (1994).* Thus, in this case, if Plaintiffs fail to establish that the citizenship of every Defendant is different than the citizenship of every Plaintiff, the Court lacks jurisdiction and it must grant Defendants' motions.

## A. Citizenship of a Delaware Limited Liability Company

In order to resolve Defendants' motions, the Court must resolve the issue of a Delaware limited liability company's citizenship for diversity of jurisdiction purposes. After a review of the available case law, the Court concludes that a limited liability company is a citizen of the states of which its individual members are citizens. See *Carden v. Arkoma Assocs., 494 U.S. 185, 187-192, 108 L. Ed. 2d 157, 110 S. Ct. 1015 (1990)*(holding that only corporations, and not other business entities such as limited partnerships, are considered citizens of the state which created it); *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship, 213 F.3d 48, 51-52 (2d Cir. 2000)*(holding that limited liability companies have [*9] the citizenship of all of its members).

Since Plaintiff Triangle is a Delaware limited liability company and Defendants were all indisputably members of Triangle, the only way for there to be complete diversity in the instant case is if each Defendant effectively withdrew from Triangle, and that after such withdrawal, each Defendant was a citizen of a different state than each Plaintiff. However, as explained below, the Court concludes that Plaintiffs have failed to adequately allege such facts.

## B. Defendants' Motions Raise Facial Challenges to

the Court's Jurisdiction

Two types of **Rule 12(b)(1)** motions to dismiss for lack of **subject matter jurisdiction** may be brought by a defendant. One is a facial challenge to the Court's jurisdiction. *Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).* When asserting a facial challenge, a defendant contends that the complaint alleges facts that, even if true, would not be sufficient to establish the court's jurisdiction. Id. In deciding a facial challenge, a Court "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable [*10] to the plaintiff." Id. However, a defendant can assert a factual challenge to the court's **subject matter jurisdiction,** which contends that the allegations in the complaint establishing jurisdiction are not sufficiently supported by the facts. Id. When considering a factual challenge, a court can consider evidence outside of the pleadings. Id.

In the instant case, Defendants' motions present facial challenges to the Court's jurisdiction. In their motions, Defendants contend that Plaintiffs refuse to allege in their Amended Complaint that Defendants effectively withdrew from Triangle. (D.I. 96 at 7)(noting that the Amended Complaint repeatedly refers to Defendants' "purported" withdrawal). Thus, the Court concludes that it can only review and consider the Amended Complaint and its attached documents when resolving Defendants' motions.

After reviewing Plaintiffs' Amended Complaint, it is clear that Plaintiffs do not allege that Defendants effectively withdrew from Triangle. Thus, Plaintiffs have failed to satisfy their burden of pleading the basis for the Court's jurisdiction, and Defendants' motions to dismiss must be granted.

## C. Plaintiffs Do Not Even Contend [*11] that the Amended Complaint Sufficiently Pleads the Basis of the Court's Jurisdiction

Plaintiffs contend that the Court should not construe Defendants' challenge as a facial challenge because there is a dispute of material fact as to whether or not Defendants effectively withdrew from Triangle. In particular, Plaintiffs cite to a complaint and its attached documents that Defendants filed in the Delaware Court of Chancery ("Chancery Court") seeking a declaratory judgment that Defendants had effectively withdrawn from Triangle in 1996. n1 (D.I. 88 at 2, 11-12). Because Defendants' present motions raise facial challenges to the Court's jurisdiction, the Court concludes that whether or not Defendants actually withdrew is irrelevant. What is relevant is whether Plaintiffs have pleaded facts that

2001 U.S. Dist. LEXIS 12535, *

establish that Defendants withdrew. Plaintiffs have not, and therefore, their contentions in opposition to Defendants' motions are unsupported. n2

> n1 The Chancery Court action has been stayed pending resolution of the instant action. (D.I. 88 at 2).

> n2 It appears that Plaintiffs have made certain tactical decisions when drafting their pleadings, but the Court is limited by the facts pleaded when deciding Defendants' motions. *Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 177 F.3d 210, 222 n.13 (3d Cir. 1999)(stating that, even if the parties do not dispute that diversity of citizenship exists, the complaint still must allege facts establishing diversity, or **dismissal** is warranted).

[*12]

Plaintiffs contend that the Chancery Court complaint can be considered by the Court in resolving the instant motions, despite the Court's conclusion that Defendants' motions raise facial challenges, because the complaint is a public record. (D.I. 88 at 11)(citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993)). However, the cases that have allowed consideration of public records involved Rule 12(b)(6) motions to dismiss, and the Court concludes that to allow consideration of public records on a **Rule 12(b)(1)** facial challenge would be to disregard the facial challenge/factual challenge distinction. See *Gould*, 220 F.3d at 176 n.6 (extending Pension Benefit to allow consideration of documents attached to a complaint when deciding a **Rule 12(b)(1)** facial attack, but not discussing whether or not it would also allow consideration of public records); *Bell Atl.-Pa., Inc. v. Pennsylvania Pub. Util. Comm'n*, 107 F. Supp. 2d 653, 658-59 (E.D. Pa. 2000)(discussing how Courts can consider public records when analyzing Rule 12(b)(6) motions to dismiss, but recognizing that **Rule 12(b)(1)** motions [*13] to dismiss are analyzed under a different standard than Rule 12(b)(6) motions, and further, that can courts can consider documents outside the pleadings when analyzing **Rule 12(b)(1)** motions only if the motion presents a factual challenge). n3

> n3 One court has held that public records can be considered by a court in deciding a **Rule 12(b)(1)** facial challenge. *Hunter v. United States*, 2000 U.S. Dist. LEXIS 20206, 2000 WL 1880257, at *3 (M.D. Pa. Dec. 15, 2000). The

court noted that, when discussing what materials may be considered by a court in determining a **Rule 12(b)(1)** facial challenge, the Gould court cited Pension Benefit, which involved a Rule 12(b)(6) motion. Id. Since the Pension Benefit court allowed consideration of public records, the court in Hunter reasoned that Gould implicitly allows for the consideration of public records when deciding a **Rule 12(b)(1)** facial attack. Id. The court reasoned that this conclusion "comports with the fact that both a Rule 12(b)(6) motion and a **Rule 12(b)(1)** facial attack argue that the propriety of **dismissal** is apparent from the face of the complaint." Id.

The Court concludes that the reasoning in Hunter is not helpful for two reasons. First, the Court believes Hunter inaccurately characterizes the Gould court's citation of Pension Benefit. Gould merely cited Pension Benefit for the proposition that the Third Circuit could "think of no principled reason why a court, in resolving a 12(b)(1) facial attack should not also consider documents attached to the complaint." *Gould*, 220 F.3d at 176 n.6 (emphasis added). Gould did not hold that public records can be considered in resolving a **Rule 12(b)(1)** facial challenge. Second, even if Gould had intended to suggest that public records could be considered in resolving a **Rule 12(b)(1)** facial attack, the Court concludes that the instant circumstances present a "principled reason" why they should not be considered. Plaintiffs hope to avoid **dismissal** on jurisdictional grounds by relying on public records, but Plaintiffs also do not want to be "bound" by the allegations in the public records for other issues, such as damages. It would be unfair to Defendants to allow Plaintiffs to rely on public records for purposes of jurisdiction, yet avoid having to plead the same facts in their Complaint because they may adversely affect other issues in the case.

[*14]

Plaintiffs also contend that the Court should deny Defendants' motions because (1) it would be an abuse of discretion to rule on the jurisdictional issue without affording them an opportunity to conduct jurisdictional discovery, and (2) the decision resolving the jurisdictional issue should be postponed until trial because the jurisdictional issue is so intertwined with the merits of the case. (D.I. 88 at 13-16). As to Plaintiffs' first contention, because the Court concludes that Plaintiffs' Amended Complaint is facially deficient, the

2001 U.S. Dist. LEXIS 12535, *

deficiency could not be cured by discovery. As to Plaintiffs' second contention, the Court concludes that it would be inappropriate to accept jurisdiction and consider the case on its merits where the challenge to the Court's jurisdiction is facial in nature. See *Society Hill Towers Owners', Ass'n v. Rendell, 210 F.3d 168, 175 (3d Cir. 2000)*(noting that the Supreme Court "has recently cautioned against the practice of assuming jurisdiction and reaching the merits of a dispute," because issuing a decision based on such "hypothetical jurisdiction" is essentially an advisory opinion)(quoting *Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 93, 140 L. Ed. 2d 210, 118 S. Ct. 1003 (1998))*. [*15]

In sum, the Court concludes that Plaintiffs fail to meet their burden to affirmatively plead facts necessary to establish the basis of the Court's jurisdiction. Thus, the Court concludes that Defendants' motions should be granted.

## CONCLUSION

For the reasons discussed, the Court will grant Defendants' motions to dismiss for lack of **subject matter jurisdiction.**

An appropriate Order will be entered.

## ORDER

At Wilmington this 14 day of August, 2001, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. Defendants Douglas H. Wolf's and Richard G. Buckingham's Motion to Dismiss for Lack of Diversity Jurisdiction (D.I. 75) is **GRANTED**.

2. Defendant W. Lawrence Patrick's Motion to Dismiss (D.I. 79) is **GRANTED**.

3. Motion of Defendants Wolf and Buckingham to Compel Discovery (D.I. 73) is **DENIED AS MOOT**.

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE

EXHIBIT C

90 Fed. Appx. 616, *; 2004 U.S. App. LEXIS 1008, **;

70 U.S.P.Q.2D (BNA) 1250

11 of 139 DOCUMENTS

**J&D HOME IMPROVEMENT, INC., Appellant v. BASEMENT DOCTOR, INC.**

No. 03-1902

**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

*90 Fed. Appx. 616; 2004 U.S. App. LEXIS 1008; 70 U.S.P.Q.2D (BNA) 1250*

**January 8, 2004, Submitted Under Third Circuit LAR 34.1(a)**
**January 22, 2004, Opinion Filed**

**NOTICE:** [**1] RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE. D.C. Civil No. 02-cv-01275. District Judge: The Honorable Sue L. Robinson.

*J&D Home Improvement, Inc. v. Basement Doctor, Inc., 247 F. Supp. 2d 575, 2003 U.S. Dist. LEXIS 2944 (D Del., 2003)*

**DISPOSITION:** Affirmed.

**LexisNexis(R) Headnotes**

**COUNSEL:** For J&D Home Improvement, Appellant: Chad M. Shandler, Richards, Layton & Finger, Wilmington, DE. Robert G. Schuler, Kegler, Brown, Hill & Ritter, Columbus, OH.

For Basement Doctor, Inc, Appellee: Stanley H. Cohen, Caesar, Rivise, Bernstein, Cohen & Pokotilow, Philadelphia, PA.

**JUDGES:** Before: BARRY, SMITH, Circuit Judges, and POLLAK, * District Judge.

> * The Honorable Louis H. Pollak, District Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

**OPINIONBY:** Maryanne Trump Barry

**OPINION:** [*616] BARRY, Circuit Judge

This appeal asks us to determine whether a federal District Court has **subject matter jurisdiction** over a declaratory judgment action asking the Court to declare, pursuant to *15 U.S.C. § 1052(d)*, that both plaintiff and defendant are entitled to concurrent use trademark registrations. [**2] The District Court held that it did not have **subject matter jurisdiction**. We agree, and will affirm.

I.

Appellant J&D Home Improvement, Inc. ("J&D") has been in the business of providing basement waterproofing, foundation support, and concrete restoration services since 1939. J&D began using the [*617] mark THE BASEMENT DOCTOR in the Midwest, unaware that appellee Basement Doctor, Inc. ("Basement Doctor") was using the mark BASEMENT DOCTOR in a different geographical area. On September 1, 1998, J&D applied for federal registration of the mark THE BASEMENT DOCTOR. On November 16, 1999, the United States Patent and Trademark Office ("PTO") issued Registration No. 2,292,578 to J&D for THE BASEMENT DOCTOR. On July 24, 2000, Basement Doctor applied for federal registration of the mark BASEMENT DOCTOR. That application was rejected.

On July 17, 2001, Basement Doctor initiated a proceeding before the Trademark Trial and Appeal Board ("TTAB") seeking cancellation of J&D's registration, under *Section 2(d) of the Lanham Act*, based upon priority of use. Basement Doctor alleged that it was the senior user because its predecessor-in-interest was using BASEMENT DOCTOR as a service mark prior to

90 Fed. Appx. 616, *; 2004 U.S. App. LEXIS 1008, **;

70 U.S.P.Q.2D (BNA) 1250

[**3] J&D's first use of THE BASEMENT DOCTOR. In October 2001, J&D filed an answer in the TTAB proceeding.

On July 8, 2002, J&D filed a complaint against Basement Doctor for a declaratory judgment in the U.S. District Court for the District of Delaware, asking the Court to declare (1) that J&D is entitled to a concurrent use registration for the mark THE BASEMENT DOCTOR for the entire country, except those areas in which Basement Doctor is able to demonstrate actual use of the mark as of J&D's filing of its registration; or (2) that J&D's registered mark for THE BASEMENT DOCTOR is valid and prima facie evidence of its right to use that mark. On July 26, 2002, Basement Doctor moved to dismiss J&D's complaint, pursuant to *FED. R. CIV. P. 12(b)(1)*, on the ground that the District Court lacked **subject matter jurisdiction** because the PTO had primary jurisdiction over J&D's concurrent use claim. The TTAB stayed the cancellation proceeding pending resolution of this action.

On February 23, 2003, the District Court granted Basement Doctor's motion to dismiss J&D's complaint. The Court held that J&D had not pled the existence of an actual controversy that [**4] would permit jurisdiction over an action under the *Declaratory Judgment Act*, and that *15 U.S.C. § 1052(d)* was not a grant of original jurisdiction. J&D now appeals. We have jurisdiction under *28 U.S.C. § 1291*.

**II.**

Our review of the District Court's order granting the motion to dismiss for lack of **subject matter jurisdiction** is plenary. See, e.g., *Turicentro, S.A. v. American Airlines Inc., 303 F.3d 293, 300 (3d Cir. 2002)* (citing *Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000))*. In a *Rule 12(b)(1)* appeal, "'we review only whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court.'" *Turicentro, 303 F.3d at 300* (quoting *Licata v. United States Postal Serv., 33 F.3d 259, 260 (3d Cir. 1994))*. "Challenges to **subject matter jurisdiction** under *Rule 12(b)(1)* may be 'facial' or 'factual.' 'Facial attacks, like this one, contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true." *Turicentro, 303 F.3d at 300, n 4* [**5] (citing *NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 341 n. 7 (3d Cir. 2001))*. Our review of a **dismissal** because a claim is not ripe is also plenary. *NE Hub Partners, 239 F.3d at 341 (3d Cir. 2001)* (citing *Philadelphia Fed'n of Teachers v. Ridge, 150 F.3d 319, 321 (3d Cir. 1998)*; and *Gould Elecs., 220 F.3d at 176)*.

Section 2(d) of the Lanham Act provides that the Director of the PTO may [*618] issue concurrent use registrations either based upon the Director's own determinations or "when a court of competent jurisdiction has finally determined that more than one person is entitled to use the same or similar marks in commerce." n1 *15 U.S.C. § 1052(d)*; see also *Enterprises Rent-A-Car Co. v. Advantage Rent-A-Car, Inc., 330 F.3d 1333, 1339 (Fed Cir. 2003)*, cert. denied *157 L. Ed. 2d 794, 124 S. Ct. 958, 2003 WL 22327301 (2003)*. J&D argues that the District Court had **subject matter jurisdiction** over the *§ 1052(d)* claim asserted in this case because *15 U.S.C. § 1121(a)* states that district courts "shall have original jurisdiction [**6] ... of all actions arising under [Chapter 22: Trademarks]," and because, they claim, *§ 1052(d)* authorizes a *§ 1121(a)* "action." The District Court held, and Basement Doctor argues, that *§ 1052(d)* authorizes a remedy only, not a *§ 1121(a)* "action," and, therefore, **subject matter jurisdiction** cannot be based on that statute.

> n1 A court does not itself cause the concurrent use registration to be issued; rather, it determines whether both parties are entitled to use the mark(s), and the PTO Director then issues the concurrent use registrations. See, e.g., *Sears, Roebuck & Co. v. Sears Realty Co., 1993 U.S. Dist LEXIS 9513, 30 U.S.P.Q. 2d 1219, 1225 (N.D.N.Y. 1993)*.

We agree with the District Court, which noted that when Congress wanted to create an "action" under the *Lanham Act*, it clearly did so. n2 No such unambiguous language is found in *§ 1052(d)*. n3 Therefore, although a court may determine that concurrent [*619] registration is appropriate (and thereby direct the PTO to issue concurrent [**7] registrations), it may only do so in the context of actions over which courts already have **subject matter jurisdiction** on some other basis. n4 See, e.g., *Old Dutch Foods, Inc. v. DanDee Pretzel & Potato Chip Co., 477 F.2d 150, 155-56 (6th Cir. 1973)* (jurisdiction in infringement action over counterclaimant's seeking concurrent use registration); *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 365-66 (11th Cir. 1997)* (affirming District Court's concurrent use findings in a *15 U.S.C. § 1125(a)* false designation of origin case). n5

> n2 See, e.g., *15 U.S.C. § 1114(1)* (any person using or reproducing a registered mark without authorization "shall be liable in a civil

90 Fed. Appx. 616, *; 2004 U.S. App. LEXIS 1008, **;

70 U.S.P.Q.2D (BNA) 1250

action by the registrant"); *15 U.S.C. § 1120* (any person who obtains a registration by false or fraudulent means "shall be liable in a civil action"); *15 U.S.C. § 1125(a)(1)* (any person using false designations of origin likely to cause confusion "shall be liable in a civil action"); *15 U.S.C. § 1129(1)* (any person who uses another's name, without permission and for profit, in an internet domain name "shall be liable in a civil action"); *15 U.S.C. § 1071(b)* (authorizing applicants unsatisfied with TTAB decisions to "have a remedy by a civil action"). [**8]

n3 The full text of *§ 1052(d)* states as follows:

No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it ... (d) Consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive: Provided, That if the Director determines that confusion, mistake, or deception is not likely to result from the continued use by more than one person of the same or similar marks under conditions and limitations as to the mode or place of use of the marks or the goods on or in connection with which such marks are used, concurrent registrations may be issued to such persons when they have become entitled to use such marks as a result of their concurrent lawful use in commerce prior to (1) the earliest of the filing dates of the applications pending or of any registration issued under this chapter; (2) July 5, 1947, in the

case of registrations previously issued under the Act of March 3, 1881, or February 20, 1905, and continuing in full force and effect on that date; or (3) July 5, 1947, in the case of applications filed under the Act of February 20, 1905, and registered after July 5, 1947. Use prior to the filing date of any pending application or a registration shall not be required when the owner of such application or registration consents to the grant of a concurrent registration to the applicant. Concurrent registrations may also be issued by the Director when a court of competent jurisdiction has finally determined that more than one person is entitled to use the same or similar marks in commerce. In issuing concurrent registrations, the Director shall prescribe conditions and limitations as to the mode or place of use of the mark or the goods on or in connection with which such mark is registered to the respective persons.

*15 U.S.C. § 1052(d)* (emphasis added). [**9]

n4 At least one treatise has suggested, albeit implicitly, that a plaintiff can bring a civil action for concurrent use registration. See TRADEMARK REGISTRATION PRACTICE § 11: 4, 2d ed. (2003). It notes that *§ 1052(d)* places certain constraints on the Director of the PTO (e.g. finding that the junior user began its use prior to filing of the senior user's application, and that no confusion will result from the concurrent uses) that it does not place on the courts, and suggests that it might be advantageous for a plaintiff to pursue concurrent use registration in the courts for this reason. Courts have recognized their freedom from these constraints, though not as a basis for concluding that jurisdiction is thereby conferred, see, e.g., *Holiday Inn v. Holiday Inns, Inc., 534 F.2d 312, 318 (C.C.P.A. 1976)*, as has the Trademark Manual of Examining Procedure ("TMEP"). See TMEP § 1207.04(F). J&D argues that this

90 Fed. Appx. 616, *; 2004 U.S. App. LEXIS 1008, **;

70 U.S.P.Q.2D (BNA) 1250

distinction conveys Congress's intent that § 1052(d) confers jurisdiction. Although we acknowledge that § 1052(d) places constraints on the Director that it does not place on courts, and that circumstances may arise whereby these constraints might prevent an applicant from receiving concurrent use registration, we do not believe that this distinction indicates that Congress intended to authorize § 1121(a) "actions" based solely on an attempt to acquire concurrent use registrations pursuant to § 1052(d). [**10]

n5 Congress's decision to include "court of competent jurisdiction" in § 1052(d), which is echoed in the PTO regulations governing concurrent use registrations, see 37 C.F.R. § 2.99(f), further supports our interpretation because it suggests that a court must have some other basis for its jurisdiction before ruling on whether the parties are entitled to use the disputed mark(s) concurrently.

Neither can J&D predicate **subject matter jurisdiction** on the relief sought under the Declaratory Judgment Act. That Act empowers district courts to "declare the rights and other legal relations of any interested party seeking such declarations," but only "in a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a) (emphasis added). J&D's complaint fails to state an actual controversy, much less one within the Court's jurisdiction.

"'The existence of a case and controversy is a prerequisite to all federal actions, including those for declaratory relief.'" Peachlum v. City of York, Pennsylvania, 333 F.3d 429, 433 (3d Cir. 2003) [**11] (quoting Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1462 (3d Cir. 1994)). "The question in each case is whether the facts alleged show that there is a substantial controversy, between parties having adverse legal interests, 'of sufficient immediacy and reality' to justify judicial resolution." Peachlum, 333 F.3d at 434 (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 85 L. Ed. 826, 61 S. Ct. 510 (1941)).

J&D asks for relief in anticipation of the TTAB's ruling in its cancellation proceeding. That proceeding, i.e. the dispute over which party is entitled to registration

of its respective mark, has been stayed pending the conclusion of this case. The TTAB will determine whether J&D is entitled to keep its registration for THE BASEMENT DOCTOR. If not, it may then utilize the PTO procedures for applying for concurrent use registration of its [*620] mark. See 37 C.F.R. § 2.99(a)-(e). No actual controversy exists now, however, because the registration for J&D's mark is valid, because no competing mark has been registered by Basement Doctor, and because no infringement [**12] claims have been made. Because no controversy exists, the District Court did not have jurisdiction over J&D's declaratory judgment action. n6

n6 Courts in other jurisdictions facing similar questions have reached the same conclusion. See, e.g., Red Lobster Inns of America, Inc. v. New England Oyster House, Inc., 524 F.2d 968, 969 (5th Cir. 1975) (no jurisdiction over a declaratory judgment action seeking determination that no conflict existed between parties' marks because "opposition proceedings before the [PTO] did not constitute a claim of infringement and therefore did not present an actual controversy as required by the Declaratory Judgment Act"); Chicago Cosmetologists Ass'n, Inc. v. National Cosmetology Ass'n, Inc., 1993 U.S. Dist. LEXIS 6870, No. 92 C 4627, 1993 WL 177027, at *3 (N. D. Ill. May 21, 1993) ("The mere filing of a statutory notice of opposition to the registration of a service mark, however, does not by itself create an actual case or controversy between the parties which is justiciable by a federal court because opposition proceedings do not constitute claims of infringement, misuse, or unfair competition ... This is true even when the PTO has suspended proceedings pending the outcome of the district court action.") (internal quotations omitted).

[**13]

Moreover, as discussed above, the District Court did not have jurisdiction to declare the parties' rights to concurrent registration because that remedy, authorized by § 1052(d), is not a § 1121(a) "action."

The order of the District Court will be affirmed.

/s/Maryanne Trump Barry

Circuit Judge

# EXHIBIT D

111 of 139 DOCUMENTS

**H. DIANA KOPICKO, Plaintiff, v. DEPARTMENT OF SERVICES FOR CHILDREN, YOUTH AND THEIR FAMILIES, Defendant.**

**Civil Action No. 03-1172-KAJ**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2004 U.S. Dist. LEXIS 16130*

**August 13, 2004, Decided**

**PRIOR HISTORY:** *Kopicko v. State, 2004 Del. LEXIS 248 (Del., May 28, 2004)*

**DISPOSITION:** [*1] Defendant's motion to dismiss granted; plaintiff's motions denied as moot.

**LexisNexis(R) Headnotes**

**COUNSEL:** H. DIANA KOPICKO, plaintiff, Pro se, Frederica, DE.

For DEPARTMENT OF SERVICES FOR CHILDREN, YOUTH AND THEIR FAMILIES, defendant: Ilona M. Kirshon, Department of Justice, Wilmington, DE.

**JUDGES:** Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Kent A. Jordan

**OPINION:**

**MEMORANDUM ORDER**

I. INTRODUCTION

Before me are several motions filed by the plaintiff, H. Diana Kopicko, and a motion to dismiss (Docket Item ["D.I."] 12) filed by the defendant, the State of Delaware's Division of Services for Children, Youth and Their Families ("DSCYF" or the "State"). The plaintiff's motions consist of two motions for leave to amend the complaint (D.I. 3, 9) and three motions for appointment of counsel (D.I. 16, 21, 27). n1 For the reasons that follow, the plaintiff's motions are denied, and the defendant's motion is granted.

n1 The plaintiff also filed a motion for an extension of time to file a brief in response to the State's motion to dismiss (D.I. 20), which was in effect granted. The plaintiff filed her answering brief (D.I. 23) on July 30, 2004.

[*2]

II. BACKGROUND

The plaintiff has experience working as a rape counselor and as a social worker with a background in crisis intervention and interviewing victims of sexual abuse. (*See* D.I. 23 at 1.) She was hired by the State in May of 1997 as a "Casual Seasonal Senior Family Services Specialist". (*Id.* at 4.) Later, in July of 1997, the plaintiff was hired as a full-time merit employee of DSCYF. (*Id.* at 5.) Apparently there was a probationary period at the outset of the employment relationship. (*See* D.I. 13 at P10.) Within that probationary period, on December 31, 1997, the State terminated her employment. (*See* D.I. 23 at 6.)

In her complaint the plaintiff alleges she was "fired because she questioned her supervisor's decisions that left children at risk." (D.I. 1) Since her firing, the plaintiff has vigorously pursued a claim for wrongful termination through the State's administrative agency and court systems. As related by the defendant in its motion to dismiss,

> [The plaintiff] presented her case before the State Merit Employee Relations Board, ("MERB") which held two days of

2004 U.S. Dist. LEXIS 16130, *

hearings, taking testimony from six witnesses and admitting 32 documents [*3] into evidence. The MERB upheld DSCYF's action in terminating plaintiff's employment, finding that the reasons for the termination of plaintiff during her probationary employment were all merit as opposed to non-merit factors and that they formed a reasonable basis for the determination that the performance during the probationary period had been unsatisfactory. (MERB Decision attached as part of Exhibit B.) Plaintiff appealed the MERB decision to the Superior Court, where President Judge Ridgely upheld the MERB Decision on the basis of the well-developed record below, finding no error of law and that there was substantial evidence on the record to support the Board's conclusion that plaintiff was not terminated for impermissible non-merit factors. *Kopicko v. Delaware Dept. of Services for Children, 2003 Del. Super. LEXIS 282, 2003 WL 21976409 (Del. Super. 2003).* ... That decision was appealed to the Delaware Supreme Court, which likewise affirmed the MERB decision, indicating that after "having carefully considered the parties' briefs and the record below, we conclude that the MERB's decision is supported by substantial evidence and is free from legal error." [*4] *Kopicko v. State Dept. of Services for Children, Youth and their Families, 2004 Del. LEXIS 248, 2004 WL 691901 (Unpublished Decision)*(Del. 2004).

(D.I. 13 at P10.)

Plaintiff also sued DSCYF in the Delaware Superior Court, challenging her **dismissal** as a breach of the implied covenant of good faith and fair dealing. *See Kopicko v. Delaware*, No. 521, 2000 (Del. May 28, 2004) (Attached to D.I. 14; referred to herein as "Supreme Court Order"). The Superior Court granted summary judgment to the defendant, holding that sovereign immunity barred the plaintiff's claims. *Kopicko v. Department of Servs for Children, Youth & Their Families, 2000 Del. Super. LEXIS 396, 2000 WL 33108936 (Del. Super.)* The Supreme Court stayed proceedings in the appeal to allow the plaintiff an opportunity to exhaust her administrative remedies, *Kopicko v. Dep't of Servs for Children, Youth & Their*

*Families, 805 A.2d 877 (Del. 2002)*, which she did as outlined above. The Supreme Court later dismissed that appeal on the basis of collateral estoppel and lack of **subject matter jurisdiction** of the suit originally in the Superior Court. (*See* Supreme Court Order at P5.)

Plaintiff evidently decided to open yet another litigation front against the defendant by filing the present action in December of 2003, alleging essentially the same [*5] dissatisfaction with the DSCYF's decision to terminate her, but couching it in the language of a claim under the "U.S. *Whistle Blower Protection Act*". Defendant has also filed two motions for leave to amend her complaint (D.I. 3, 9), in which she alters certain of her allegations about "discriminatory practice" and about the relief she seeks, but she continues to base her claim upon the "U.S. *Whistle Blower Protection Act*".

After some fits and starts with the service of the complaint, the State filed its motion to dismiss pursuant to *Federal Rule of Civil Procedure 12(b)* (D.I. 12). The motion cites a variety of reasons for dismissing the action, including lack of **subject matter jurisdiction,** the statute of limitations, insufficiency of service of process, *Eleventh Amendment* immunity, sovereign immunity, and collateral estoppel and *res judicata*. The defendant's motion and supporting memorandum of points and authorities was filed on May 13. No response was forthcoming from the plaintiff until I issued an order on July 15, 2004 stating that the plaintiff would have to file an answering brief on or before July 30, 2004, or otherwise show cause [*6] why the case should not be dismissed for failure to prosecute. (D.I. 15.) Five days later, the plaintiff filed a motion for appointment of counsel (D.I. 16) which is opposed by the State (D.I. 18). n2 In addition, however, the plaintiff has filed an answering brief to the motion to dismiss filed by the State (D.I. 23). Thus, I presently have before me the plaintiff's motion for appointment of counsel and the defendant's motion to dismiss.

n2 As previously noted, *supra* at 1, the plaintiff has filed two additional motions seeking the same relief. (D.I. 21, 27.)

III. STANDARDS

The State has moved to dismiss the Complaint under *Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6)*. A challenge under *Rule 12(b)(1)* to **subject matter jurisdiction** in a case requires the court to ask "whether the complaint alleges facts on its face which, if taken as true, would be sufficient to invoke the district court's

2004 U.S. Dist. LEXIS 16130, *

jurisdiction." *FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996).* [*7] Under *Rule 12(b)(6)*, a motion to dismiss a complaint for failure to state a claim can only be granted if, "taking the allegations of the complaint as true, and liberally giving the plaintiff the benefit of all inferences that may be drawn therefrom, it appears beyond doubt that the plaintiff can prove no set of facts upon which relief could be granted." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 175 (3d Cir. 1988).* The moving parties bear the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir.1991); Locklear v. Remington, 2003 U.S. Dist. LEXIS 7592, 2003 WL 21003722 at *1 (D. Del. 2003).* However, "the pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)* (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 340 (2d ed. 1990)). The Court need not "accept legal conclusions either alleged or inferred from the pleaded facts." *Id.* (quoting *Mescall v. Burrus, 603 F.2d 1266, 1269 (7th Cir.1979)).* [*8]

## IV. DISCUSSION

The State aptly notes that the plaintiff has nowhere identified the jurisdictional basis for her complaint. She cites what she calls the "U.S. *Whistle Blower Protection Act*", but gives no statutory reference. The only statute that appears to fit what the plaintiff is trying to get at is the *Whistle-Blower Protection Act of 1989*, Pub.L. 101-12 (codified at various sections of Title 5 of the United State Code). However, that statute does not cover state employees. Rather, it is designed to protect federal employees. *See 5 U.S.C. § 2105* (defining "an employee" for purposes of Title 5 as including people in

federal civil service, or someone subject to the supervision of a federal civil servant, or someone "engaged in the performance of a Federal function" under a law or Executive act). Indeed, in passing that act, Congress noted that it wanted to "strengthen and improve protection for the rights of Federal employees ... ." *See* Public Law 101-12, April 10, 1989, 103 Stat 16 (set forth in note to *5 U.S.C. § 1201*). I am thus compelled to conclude that, as the State contends, the complaint contains no basis for this [*9] court to exercise jurisdiction in this matter. The amendments the plaintiff seeks to make to her complaint do not correct the jurisdictional defect in any respect and are therefore immaterial to that conclusion. The complaint must therefore be dismissed, and the motions to amend the complaint and for appointment of counsel must be denied as moot. n3

> n3 Because I conclude that the challenge to **subject matter jurisdiction** is dispositive, I need not address the remaining arguments for **dismissal** advanced by the defendant.

## V. CONCLUSION

Accordingly, it is hereby ORDERED that the defendant's motion to dismiss (D.I. 12) is GRANTED, and the plaintiff's motions to amend the complaint (D.I. 3, 9) and for appointment of counsel (D.I. 16, 21, 27) are DENIED as moot.

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

August 13, 2004
Wilmington, Delaware

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2005, I electronically filed a true and correct copy of the Defendant Delaware First Federal Credit Union's Opening Brief in Support of the Motion to Dismiss with the Clerk of the Court using CM/ECF.

I hereby certify that on March 30, 2005, I mailed by United States Postal Service, the same to the following non-registered participants:

Antonio Smith
Veronica A. Hornbuckle
27 Gershwin Circle
Newark, DE 19702


_____
Seth J. Reidenberg, Esquire (No.3657)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6706
Facsimile: (302) 576-3442
E-Mail: sreidenberg@ycst.com

*Attorneys for Defendant Delaware First
Federal Credit Union*