# EXHIBIT A



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

ANTONIO SMITH and
VERONICA A. HORNBUCKLE          CASE NO. 05-140 JJF

Vs.                             FIRST AMENDMENT
                                COMPLAINT
DELAWARE FIRST
FEDERAL CREDIT UNION
_____/

### FIRST AMENDMENT CIVIL COMPLAINT

### And DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiffs sue and file this first amendment civil complaint for

Their cause of action against the Defendants Alleges and state as follows;

### ALLEGATIONS COMMON TO ALL CAUSE OF ACTION

   1. This law suit is a cause of action for violation of the Fourteen Amendment

   Of the United States Constitution (Due Process), Breach of Contract

   (Breach of Duty), Intentional Misrepresentation (Fraud) and Intentional

   Emotional Distress (Pain and Suffering).

   2. That the Plaintiffs sue the Defendants for $250,000.00 in U.S. Currency

   For Compensatory and Punitive Damages to be determine at jury trial.

### II.JURISDICTION

   3. That the Plaintiffs resident is located at 27 Gershwin Circle Newark,

   Delaware. That the Defendants are a Federal Bank Credit Union doing business

   At 1815 Newport Gap Pike Wilmington, Delaware. That this court has

   Jurisdiction and therefore will be heard before this honorable court.

1

## III . GENERAL ALLEGATIONS

4.  On or around December 28, 2004 the Plaintiffs went to fill out legal documents to not authorize Hertz Corporation to ceased any debit transaction on card based being replace by another card.

5.  The representative had the Plaintiffs to sign the Legal documents and told them that the account was flag and everything was ok.

6.  The Plaintiffs left under the impression that there should not be any transactions allowed on the debit card on that particular debit card from this merchant.

7.  From December 29, 2004 thru January 2005, there was no transaction from said merchant HertzCorp.

8.  On or around February 11, 2005 merchant Hertz rental car submit to the Plaintiff debit card in the Amount of $5652.95 with out the Plaintiffs authorization or knowledge. See Exhibit- A

9.  Delaware First Federal Credit Union never inform or sent any notices of this extremely large transaction amount to the Plaintiffs and intentionally and knowingly cover up the transaction. Plaintiffs did not have said amount in the account and was unaware of what had happened.

10. On or around  February 24, 2005 the Plaintiffs went to make a withdrawal from said account with debit card and was advised to see financial institution. See Exhibit-B

11.On or around February 25, 2005 the Plaintiffs went to cash a check and was inform by the bank teller that the account was overdrawn by $5,652.95. The Plaintiffs was immediately in shock and was traumatize because the Plaintiffs had written previous checks to pay some bills.

2

Exhibit -A

**Fee Assessed - NON SUFFICIENT FUNDS (STMT KEY = 00001000)**

| 02/23/2005 | 02/23/2005 | 10:27 | 991 | 570 | 9010 | | 546 | | (30.00) | (90.00) |

**Fee Assessed - NON SUFFICIENT FUNDS (STMT KEY = 00001000)**

| 02/23/2005 | 02/23/2005 | 10:27 | 992 | 570 | 9010 | | 550 | | (30.00) | (120.00) |

**Fee Assessed - NON SUFFICIENT FUNDS (STMT KEY = 00001000)**

| 02/24/2005 | 02/11/2005 | 06:59 | 994 | 371 | 9010 | | 806535 | | (5,532.95) E | (5,652.95) E |

**Electronic Withdrawal - HERTZ RENT-A-CAR MIAMI FL27763019 (STMT KEY = 88888888)**     Regulation E

| 02/11/2005 | | 06:59 | 995 | 570 | 9010 | | | | (30.00) | (5,682.95) |

**Fee Assessed - NON SUFFICIENT FUNDS (STMT KEY = 00001000)**

| 02/24/2005 | 02/23/2005 | 03:12 | 996 | 570 | 9010 | | 554 | | (30.00) | (5,712.95) |

**Fee Assessed - NON SUFFICIENT FUNDS (STMT KEY = 00001000)**

| 02/24/2005 | 02/25/2005 | 18:52 | 997 | 530 | 9012 | 27895090 | | | 749.17 | (4,963.78) E |

**ACH Deposit - OIGENERAL MOTORS (STMT KEY = 00000100)**     Regulation E

*Exhibit-B*



SAVE $$$ AT WAWA
NO ATM SURCHARGE
BANKS FEES MAY APPLY

022405  0638PM  PN6126
XXXXXXXXXXXX7007

..32 S DUPONT HY
NEW CASTLE    DE
        $.00    SEQ#7331
    INVALID CARD.
 PLEASE CONTACT YOUR
FINANCIAL INSTITUTION

**50¢ Off**
*Any Wawa*
*Hot-To-Go*
*Bowls*
Expiration 1-31/05

12. The Plaintiffs spoke with two of the Representatives in which one of the representative was named Pat. The Plaintiffs asked the representative who gave the bank authorization to allowed the transaction to go threw and how can they debit a consumer account when $5,652.95 was never in the account. The representatives did not give any explanation except that the account was flag and should not have been debited to the Plaintiffs checking account in the amount $5,652.95. See Exhibit-C

13. The Defendants told the Plaintiffs to write a dispute letter. The Plaintiff ask the Defendants, how can you allow a debit transaction to a checking account of a large sum of $5,652.95 dollars against the Plaintiffs checking account and not a credit card. The Defendants assured the Plaintiffs that the problem would be immediately corrected. The Defendants told the Plaintiffs that they would need a dispute letter from the Plaintiffs.

14. On or around February 28, 2004 the Plaintiffs gave a copy of the dispute letter to the Defendants for the dispute. The Plaintiffs inform the Defendants that they would not be responsible for any return checks or over draft fees. The Defendants took the dispute copy and told the Plaintiffs that they could not do anything for the Plaintiffs. The Plaintiffs then asked the Defendants what was the purpose of taking out their time to type up the dispute letter if they knew it would not do any good. See Exhibit-D

3

15. The Plaintiffs believed and relied on the Defendants statements that the

Account was indeed flag back in December 28, 2004 and that the Defendants

Would do everything to help and protect the Plaintiffs account.

16. The Plaintiffs continue to receive NSF return checks notices and over

Draft fees. The Plaintiffs became sick, began to have migraine headaches

And loss of sleep. The Plaintiffs start worrying their bills was going to be paid

Because of what the Defendants had done.

17. The Defendants never gave the Plaintiffs any notice of any transaction

On February 11, 2005 and took it upon themselves to debit the account of

$5, 652.95 and did not send the Plaintiffs any notices or advised the Plaintiffs

That a large debit transaction had taken place.

18. The Defendants intentionally told the Plaintiffs to submit a letter of dispute

And knowing that the Defendants had no intention of doing anything about the

Problem.

19. The Defendants intentionally and knowingly misrepresented the facts and

Cover up the large transaction in February to the Plaintiffs checking account in

The amount of $5,652.95. The Defendants had superior knowledge.

20. Because of the Defendants not sending any notices or advised the Plaintiffs

Of what had happen and mislead statements the Plaintiffs incurred harmed

From the Defendants.

4

## CAUSES OF ACTION

### COUNT- I

### VIOLATION OF FOURTEENTH AMENDMENT

The Plaintiffs hereby incorporates each and ever allegation and part hereof
Paragraphs 1-20.

21. The Defendants had an obligation to notify the Plaintiffs of any transaction
That occurs with the Plaintiffs checking account.

22. That Defendants should have immediately contact or inform the Plaintiffs
Of a large transaction on February 11, 2005

23. The Plaintiffs never gave authorization for the amount of $5,652.95. Upon
Discovery the Plaintiff did everything to prevent injustice to their account by
Immediately contacting the Federal Credit Union.

24. The Defendants fail to protect the Plaintiffs as required by state and federal
Laws. The Defendants did not use reasonable care to protect the Plaintiffs
Account

25. Because of not properly notifying the Defendants have caused the
Plaintiff's considerable financial harm and hardship.

5

## COUNT II

## BREACH OF CONTRACT

The plaintiffs hereby incorporates each and every allegation and make part hereof

Paragraphs 1-25.

26. The Defendants had a fiduciary obligation to the Plaintiffs to protect their account

With care and not allow any transaction that were not given any authorization. The

Defendants never gave the Plaintiffs any notice of any kind.

27. That the Plaintiffs did everything to prevent injustice to their account by immediately

Contacting Delaware First Credit Union.

28. The Defendants fail to perform as required by Federal Laws. The Defendants did not

Use reasonable care.to protect the Plaintiffs.

29. Because of the breach of contract the Defendants have caused the Plaintiffs

Considerable financial harm and hardship.

6

## COUNT- III

## FRAUD

## INTENTIONAL MISREPRESENTATION

The Plaintiffs hereby incorporates each and every allegation and make a part hereof
Paragraphs 1-29

30. The Defendants was aware or should have been aware of the fact that the business
Transaction was not authorized by the Plaintiffs.

31. The Defendants knowingly and intentionally that the account was indeed flag and
That the merchant Hertz Rental Corporation was not able to debit the Plaintiffs.

32. The Defendant then told the Plaintiffs to bring in a letter to dispute the Transaction
And that would be the only way to stop the transaction.

33. The Plaintiffs had no reason not to believe the Defendants and relied on the
Defendant's statements, after all the Defendants had superior knowledge. The Plaintiffs
Had no way of knowing what the Defendants had planned or done.

34. Because of the statement and acts the Defendants incurred harm and financial
Hardship. The Plaintiffs have checks bouncing and over draft fees and gotten behind
With bills and creditors.

7

## COUNT -I V

## INTENTIONAL EMOTIONAL DISTRESS

Plaintiffs hereby reallege and incorporate each and every allegation and make a part Hereof Paragraphs hereof 1-34.

34. The Defendants continue to mislead the Plaintiffs that the account would taken care Of and to bring a dispute letter, only to continue to mislead the Plaintiffs.

35. Because of the false statement to the Plaintiffs and allowing afraudulent debit on the Plaintiffs account the Plaintiffs was seriously harmed.

36. The Defendants intentionally and knowingly disburse $5,652.95 and knew that the Plaintiffs never had said funds in the account.

37. The Defendants never sent any notices and had no intention of informing the Plaintiffs about transaction that took place on February 11, 2005 in the amount of $5,652.95.

38. The Plaintiffs was harmed from this unprofessional and fraudulent transaction. The Plaintiffs had many sleepless nights, anxiety and migrain headaches from trying to Continue to pay their bills.

8

WHEREFORE, the prays that the honorable court will grant a Jury Trial on the merit

Of this case. The Plaintiffs are seeking interest according to law; cost and fees incurred

Within; Compensatory Damages and Punitive Damages to deter the Defendants from this

Kind of Unprofessional behavior towards another consumer and /or customers in the

Future. This law suit is in the public interest.

**<u>PLAINTIFFS DEMAND JURY TRIAL</u>**

Respectfully Submitted,

Veronica A. Hornbuckle

Antonio Smith

9

## **CERTIFICATION**

I hereby certify that this is a true and correct copy of the following to the Defendants

Attorney Seth J. Reidenberg / YOUNG CONWAY STRARGATT & TAYLOR, LLP

Located at the Brandywine Building 1000 West Street, 17th Floor, Wilmington, Delaware

19801 and to the honorable courts on this _____8_____ day of _S 9 / 9_ 2005.


Veronica A. Hornbuckle
27 Gershwin Circle
Newark, Delaware 19702


Antonio Smith
27 Gershwin Circle
New, Delaware 19702

10

$\mathcal{E}x h i b i t - C$

| Tran Date | Eff Date | Time | Seq | TX# | Tlr# | Trace Nbr | Draft/Auth # | Div Paid | Bal Change | New Balance | Ind |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Acct# 80457 | | | | | Member VERONICA A HORNBUCKLE, 1540345 | | | | | 2/25/2005  Page 1 of 1 | |
| | | | | | | | Current Balance | -4,963.78 | | | |
| 02/23/2005 | 02/22/2005 | 10:27 | 990 | 570 | 9010 | | 552 | | (30.00) | (60.00) | |
| Fee Assessed - NON SUFFICIENT FUNDS (STMT KEY = 00001000) | | | | | | | | | | | |
| 02/23/2005 | 02/22/2005 | 10:27 | 991 | 570 | 9010 | | 548 | | (30.00) | (90.00) | |
| Fee Assessed - NON SUFFICIENT FUNDS (STMT KEY = 00001000) | | | | | | | | | | | |
| 02/23/2005 | 02/22/2005 | 10:27 | 992 | 570 | 9010 | | 550 | | (30.00) | (120.00) | |
| Fee Assessed - NON SUFFICIENT FUNDS (STMT KEY = 00001000) | | | | | | | | | | | |
| 02/24/2005 | 02/11/2005 | 06:59 | 994 | 371 | 9010 | | 606535 | | (5,532.95) | (5,652.95) | E |
| Electronic - Withdrawal - HERTZ RENT-A-CAR MIAMI FL27753019 (STMT KEY = 99999999) | | | | | | | | | | Regulation E | |
| 02/24/2005 | 02/11/2005 | 06:59 | 995 | 570 | 9010 | | | | (30.00) | (5,682.95) | |
| Fee Assessed - NON SUFFICIENT FUNDS (STMT KEY = 00001000) | | | | | | | | | | | |
| 02/24/2005 | 02/23/2005 | 09:12 | 996 | 570 | 9010 | | 554 | | (30.00) | (5,712.95) | |
| Fee Assessed - NON SUFFICIENT FUNDS (STMT KEY = 00001000) | | | | | | | | | | | |
| 02/24/2005 | 02/25/2005 | 18:52 | 997 | 590 | 9012 | 27895090 | | | 749.17 | (4,963.78) | E |
| ACH Deposit - 0IGENERAL MOTORS (STMT KEY = 00000100) | | | | | | | | | | Regulation E | |

Exhibit -1

Ms. Veronica A. Hornbuckle
Mr. Antonio Smith
27 Gershwin Circle
Newark, Delaware 19702

February 28, 2005

Delaware First
Federal Credit Union
1815 Newport Gap Pike
Welmington, De 19808-6241

Re: In re: Veronica A. Hornbuckle
Antonio Smith
Acct no. 80457, 88708 and 88351

Dear Management,

We are disputing the transaction that took place on February 11, 2005 by merchant Hertz car rental Corporation. Hertz rental Corporation was aware and was told not to use the account because the card was misplaced and we had put a flag on the card on December 28 ,2004.

We are disputing this transaction because no one from Hertz Corporation did not get any authorization pertaining to a bill or debit amount of $5,652.95 to be debit to our account. This is fraud by Hertz rental car and by the Delaware First Credit Union by allowing this merchant to debit this account on February 11, 2005 for the amount $5,652.95. This transaction should have never been approved by Delaware First Credit Union.

Please be advised that we will not be responsible for any over drafts or return items on this account. **PLEASE GOVERN YOURSELF ACCORDINGLY.**

Very Truly Yours,

Veronica A. Hornbuckle

Antonio Smith

# EXHIBIT B

LEXSEE 2003 U.S. DIST LEXIS 20342

**GILBERT RAY FRANCIS, Plaintiff, v. NORTHEAST COMMUNITY FEDERAL
CREDIT UNION, Defendant.**

**No. C 03-4899 CRB**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA**

*2003 U.S. Dist. LEXIS 20342*

**November 6, 2003, Decided
November 6, 2003, Filed; November 7, 2003, Entered in Civil Docket**

**DISPOSITION:** [*1] Complaint dismissed.

**LexisNexis(R) Headnotes**

**COUNSEL:** Gilbert Ray Francis, PLAINTIFF, Pro se,
San Francisco, CA USA.

**JUDGES:** CHARLES R. BREYER, UNITED STATES
DISTRICT JUDGE.

**OPINIONBY:** CHARLES R. BREYER

**OPINION:**

### ORDER

Now before the Court is plaintiff's application to
proceed *in forma pauperis* ("IFP"). A court may author-
ize a plaintiff to prosecute an action in federal court
without prepayment of fees or security if the plaintiff
submits an affidavit showing that he or she is unable to
pay such fees or give security therefor. See *28 U.S.C. §
1915*(a). Plaintiff has not submitted the required docu-
mentation. While he attests that his total monthly income
is $ 860.00, he does not provide the Court with other
information, such as monthly expenses, amount of
money in bank accounts, and the value of other assets he
may own.

Even if plaintiff had submitted the required docu-
mentation, however, the Court would not grant his appli-
cation. A court is under a continuing duty to dismiss an
*in forma pauperis* case whenever it determines that the
action "(i) is frivolous or malicious; (ii) fails to state a
claim on which relief may be granted; or (iii) seeks
monetary [*2] relief against a defendant who is immune
from such relief." *28 U.S.C. § 1915*(e)(2)(B)(I)-(III).

Plaintiff's complaint alleges that on October 29,
2003 he entered the Tenderloin branch of defendant
Northeast Community Federal Credit Union. He ap-
proached the "administrative" section of the Credit Un-
ion to inquire about direct deposit and a Budget Blue-
print. A female Credit Union employee stepped in front
of plaintiff and stated "You get out of this area!" She
again "loudly commanded:" "You get out of this area.
Over there. You hear." When plaintiff started to explain
what he was doing, the employee exclaimed: "Don't talk
to me that way" and escorted plaintiff to the door. Plain-
tiff left the Credit Union. He returned to the Credit Union
at a later date, apparently without incident.

Less than a week later plaintiff filed this action in
federal court. The complaint is entitled: "Civil Rights
Complaint pursuant to Title 42/1983, California Consti-
tution Article I, 1789 Judiciary Act and Constitution of
the United States." He alleges that as a result of defen-
dant's actions, he "was placed in imminent physical dan-
ger without reason and his right to be secure in his [*3]
person was flagrantly violated without probable cause."
Plaintiff seeks 500 million dollars in punitive damages.

These allegations do not state a claim for relief that
may be adjudicated in federal court. Plaintiff's constitu-
tional claims and *42 U.S.C. section 1983* claims may be
brought only against *government* defendants. Although
defendant Northeast Community Federal Credit Union
has the word "federal" in its name, it is not part of the
federal government. The Court takes judicial notice that
it is a private non-profit, member-owned, federally in-
sured, community development credit union. The fact
that it is federally insured does not make it a government
entity. In sum, the United States Constitution and section
1983 do not apply to plaintiff's allegations.

2003 U.S. Dist. LEXIS 20342, *

For the foregoing reasons, plaintiff's complaint is DISMISSED without leave to amend.

**IT IS SO ORDERED.**

Dated: November 06, 2003

CHARLES R. BREYER

UNITED STATES DISTRICT JUDGE

EXHIBIT C

85 of 139 DOCUMENTS

QUENTIN KETTERSON, et al., Plaintiffs, v. DOUGLAS H. WOLF, et al., Defendants.

Civil Action No. 99-689-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2001 U.S. Dist. LEXIS 12535*

August 14, 2001, Decided

**DISPOSITION:** [*1] Defendants Douglas H. Wolf's and Richard G. Buckingham's Motion to Dismiss for Lack of Diversity Jurisdiction (D.I. 75) GRANTED. Defendant W. Lawrence Patrick's Motion to Dismiss (D.I. 79) GRANTED. Motion of Defendants Wolf and Buckingham to Compel Discovery (D.I. 73) DENIED AS MOOT.

LexisNexis(R) Headnotes

**COUNSEL:** Charlene Davis, Esquire, and Richard L. Abbott, Esquire, THE BAYARD FIRM, Wilmington, Delaware, for Plaintiffs.

Z. Lance Samay, Esquire, Of Counsel, Morristown, New Jersey, for Plaintiffs.

R. Franklin Balotti, Esquire, and Catherine G. Dearlove, Esquire, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware, for Douglas H. Wolf, Defendant.

Richard J. Idell, Esquire, Of Counsel, IDELL, BERMAN & SEITEL, San Francisco, California, for Douglas H. Wolf, Defendant.

R. Franklin Balotti, Esquire, and Catherine G. Dearlove, Esquire, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware, for Richard G. Buckingham, Defendant.

Richard B. Cooper, Esquire, and Erik W. Kvam, Esquire, Of Counsel, COOPER, BROWN & BEHRLE, P.C., New York, New York, for Richard G. Buckingham, Defendant.

Andre G. Bouchard, Esquire, and Joel Friedlander, Esquire, BOUCHARD MARGULES & FRIEDLANDER, Wilmington, [*2] Delaware, for W. Lawrence Patrick, Defendant.

Robert L. Fila, Esquire, Of Counsel, Columbia, Maryland, for W. Lawrence Patrick, Defendant.

**JUDGES:** JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** JOSEPH J. FARNAN, JR.

**OPINION:**

MEMORANDUM OPINION

August 14, 2001
Wilmington, Delaware

**FARNAN, District Judge.**

Presently before the Court is Defendants Douglas H. Wolf's and Richard G. Buckingham's Motion to Dismiss for Lack of Diversity Jurisdiction (D.I. 75), and Defendant W. Lawrence Patrick's Motion to Dismiss (D.I. 79), pursuant to *Rule 12(b)(1) of the Federal Rules of Civil Procedure.* For the reasons discussed below, the Court will grant the motions.

BACKGROUND

The Amended Complaint filed in this action alleges the following facts. Plaintiff Quentin Ketterson ("Mr. Ketterson") is an investment banker based in New Jersey who is engaged in the business of facilitating transactions in the broadcast and computer software industries. Mr. Ketterson created Plaintiff Triangle Broadcasting

Company, L.L.C. ("Triangle")(collectively "Plaintiffs"), which is a Delaware limited liability company, in the fall of 1995 "for the express purpose of specializing [*3] in acquiring control of, or in any way facilitating the sale of, the stock of broadcasting companies, which own groups of TV and/or radio stations." Defendant Douglas H. Wolf ("Mr. Wolf"), from San Francisco, California, and Defendant Richard G. Buckingham ("Mr. Buckingham"), from New York, are both attorneys and businessmen who specialize in "facilitating tax-driven business transactions." Defendant W. Lawrence Patrick ("Mr. Patrick") is a Maryland attorney who owns Patrick Communications Corporation, a radio and television station brokerage firm (the individual defendants are collectively "Defendants").

Mr. Ketterson and Mr. Patrick, who were introduced by a mutual friend in early 1995, agreed to become equal partners in a business of "soliciting broadcast station sellers, buyers and brokers." In July of 1995, as a result of their initial work on this venture, Mr. Ketterson and Mr. Patrick were introduced to Mr. Buckingham, who at the time was affiliated with Mr. Wolf in an unincorporated association. Mr. Ketterson and Mr. Patrick were impressed with some of Mr. Buckingham's business proposals and sought to work with him in the future. In anticipation of working with Mr. Buckingham [*4] and Mr. Wolf, on or about August 1, 1995, Mr. Ketterson and Mr. Patrick executed a letter agreement establishing a partnership in which they would equally share any compensation earned as a part of their dealings with Mr. Buckingham and Mr. Wolf. At the end of October 1995, after several weeks of frequent communications among all four individuals, Mr. Ketterson and Mr. Patrick agreed with Mr. Buckingham and Mr. Wolf to formalize their business relationship by executing an agreement to create Triangle, a Delaware limited liability company, in which each individual would have a 25% interest. According to the terms of the agreement, Triangle's existence was effectuated on November 20, 1995. The purpose of Triangle was to "pursue and facilitate broadcast station sales transactions."

During the ensuing months, Mr. Ketterson and Mr. Patrick began working on Triangle's behalf, when, in February of 1996, they learned that Mr. Buckingham and Mr. Wolf had recently completed a $ 165 million broadcast station stock sale separate from Triangle's business operations. Mr. Ketterson and Mr. Patrick continued to learn of other independent business activities in which Mr. Buckingham and Mr. Wolf had [*5] been engaging, and the controversy among the four escalated in July of 1996 when Mr. Wolf expressed reluctance "to honor his contractual commitment to share

equally Triangle's earnings with [Mr. Ketterson and Mr. Patrick]."

Despite their concerns about Mr. Buckingham and Mr. Wolf, Mr. Ketterson and Mr. Patrick continued to work in securing transactions for Triangle, and they regularly sent Mr. Buckingham and Mr. Wolf update letters to detail their progress. In response to one of these letters, in August of 1996, Mr. Buckingham and Mr. Wolf informed Mr. Ketterson and Mr. Patrick of their desire to "redefine" their relationship. Rather than resisting and possibly irreparably damaging their relationship with Mr. Buckingham and Mr. Wolf, Mr. Ketterson and Mr. Patrick drafted a modification of their agreement reducing their respective share of Triangle's profits.

In October 1996, Mr. Ketterson received a copy of a letter authored by Mr. Patrick that indicated that Mr. Ketterson had been completely excluded from a number of completed and pending Triangle transactions. On November 11, 1996, Mr. Ketterson received a letter from Mr. Buckingham and Mr. Wolf in which the two "purported to [*6] 'withdraw' from Triangle retroactively to August 1996." Mr. Ketterson quickly objected in writing to "the impropriety of the action of [Mr. Buckingham and Mr. Wolf] in totally usurping Triangle's business and circumventing the LLC Agreement." In December 1996, Mr. Buckingham and Mr. Wolf informed Mr. Patrick that he could maintain his financial relationship with them, and could be indemnified by them, only if Mr. Patrick agreed to (1) withdraw from Triangle, (2) accept $ 140,000 as his share of earnings for all of his contributions to Triangle to that date, (3) exclude Mr. Ketterson from any future broadcast station transaction, and (4) deprive Mr. Ketterson of any monies owed to him and of any legal rights that he may have possessed. Mr. Patrick eventually sent a letter to Mr. Ketterson on December 24, 1996, that expressed his desire to formally end his business relationship with Mr. Ketterson and stating that he would continue doing business with Mr. Buckingham and Mr. Wolf. On May 27, 1997, Mr. Ketterson authored a letter to Mr. Buckingham and Mr. Wolf which demanded an accounting of all of Triangle's profits, but Mr. Ketterson received no response. His follow-up phone calls in [*7] late 1997 and early 1998 also went unanswered.

On November 10, 1998, Plaintiffs (Mr. Ketterson and Triangle) filed an action in the United States District Court for the District of New Jersey. (D.I. 88 at 1). Plaintiffs' Amended Complaint asserts claims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) breach of fiduciary duties, (4) conversion, (5) oppressive conduct, (6) fraud and

conspiracy to defraud, (7) unjust enrichment, and (8) tortious interference with business opportunities, and it also demands an accounting of all of Triangle's profits. On October 14, 1999, the New Jersey court transferred the action to this Court because of improper venue. (D.I. 88 at 2). Defendants filed the instant motions on March 10, 2000, seeking dismissal of Plaintiffs' Amended Complaint due to lack of subject matter jurisdiction. (D.I. 88 at 2).

DISCUSSION

In order for the Court to have subject matter jurisdiction of an action containing only state law claims, there must be "complete diversity [of citizenship] between all plaintiffs and all defendants." *Development Fin. Corp v. Alpha Hous. & Health Care, Inc , 54 F.3d 156, 158 (3d Cir. 1995).* [*8] The burden to establish jurisdiction is on the plaintiff. *Kokkonen v. Guardian Life Ins. Co of Am., 511 U.S. 375, 377, 128 L. Ed. 2d 391, 114 S. Ct. 1673 (1994).* Thus, in this case, if Plaintiffs fail to establish that the citizenship of every Defendant is different than the citizenship of every Plaintiff, the Court lacks jurisdiction and it must grant Defendants' motions.

A. Citizenship of a Delaware Limited Liability Company

In order to resolve Defendants' motions, the Court must resolve the issue of a Delaware limited liability company's citizenship for diversity of jurisdiction purposes. After a review of the available case law, the Court concludes that a limited liability company is a citizen of the states of which its individual members are citizens. See *Carden v. Arkoma Assocs , 494 U.S. 185, 187-192, 108 L. Ed. 2d 157, 110 S. Ct. 1015 (1990)*(holding that only corporations, and not other business entities such as limited partnerships, are considered citizens of the state which created it); *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship, 213 F.3d 48, 51-52 (2d Cir. 2000)*(holding that limited liability companies have [*9] the citizenship of all of its members).

Since Plaintiff Triangle is a Delaware limited liability company and Defendants were all indisputably members of Triangle, the only way for there to be complete diversity in the instant case is if each Defendant effectively withdrew from Triangle, and that after such withdrawal, each Defendant was a citizen of a different state than each Plaintiff. However, as explained below, the Court concludes that Plaintiffs have failed to adequately allege such facts.

B. Defendants' Motions Raise Facial Challenges to

the Court's Jurisdiction

Two types of Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction may be brought by a defendant. One is a facial challenge to the Court's jurisdiction. *Gould Elecs, Inc. v. United States, 220 F.3d 169, 176 (3d Cir 2000)* When asserting a facial challenge, a defendant contends that the complaint alleges facts that, even if true, would not be sufficient to establish the court's jurisdiction. Id. In deciding a facial challenge, a Court "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable [*10] to the plaintiff." Id. However, a defendant can also assert a factual challenge to the court's subject matter jurisdiction, which contends that the allegations in the complaint establishing jurisdiction are not sufficiently supported by the facts. Id. When considering a factual challenge, a court can consider evidence outside of the pleadings. Id.

In the instant case, Defendants' motions present facial challenges to the Court's jurisdiction. In their motions, Defendants contend that Plaintiffs refuse to allege in their Amended Complaint that Defendants effectively withdrew from Triangle. (D.I. 96 at 7)(noting that the Amended Complaint repeatedly refers to Defendants' "purported" withdrawal). Thus, the Court concludes that it can only review and consider the Amended Complaint and its attached documents when resolving Defendants' motions.

After reviewing Plaintiffs' Amended Complaint, it is clear that Plaintiffs do not allege that Defendants effectively withdrew from Triangle. Thus, Plaintiffs have failed to satisfy their burden of pleading the basis for the Court's jurisdiction, and Defendants' motions to dismiss must be granted.

C. Plaintiffs Do Not Even Contend [*11] that the Amended Complaint Sufficiently Pleads the Basis of the Court's Jurisdiction

Plaintiffs contend that the Court should not construe Defendants' challenge as a facial challenge because there is a dispute of material fact as to whether or not Defendants effectively withdrew from Triangle. In particular, Plaintiffs cite to a complaint and its attached documents that Defendants filed in the Delaware Court of Chancery ("Chancery Court") seeking a declaratory judgment that Defendants had effectively withdrawn from Triangle in 1996. n1 (D.I. 88 at 2, 11-12). Because Defendants' present motions raise facial challenges to the Court's jurisdiction, the Court concludes that whether or not Defendants actually withdrew is irrelevant. What is relevant is whether Plaintiffs have pleaded facts that

establish that Defendants withdrew. Plaintiffs have not, and therefore, their contentions in opposition to Defendants' motions are unsupported. n2

> n1 The Chancery Court action has been stayed pending resolution of the instant action. (D.I. 88 at 2).

> n2 It appears that Plaintiffs have made certain tactical decisions when drafting their pleadings, but the Court is limited by the facts pleaded when deciding Defendants' motions. *Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co., 177 F.3d 210, 222 n.13 (3d Cir. 1999)*(stating that, even if the parties do not dispute that diversity of citizenship exists, the complaint still must allege facts establishing diversity, or dismissal is warranted).

[*12]

Plaintiffs contend that the Chancery Court complaint can be considered by the Court in resolving the instant motions, despite the Court's conclusion that Defendants' motions raise facial challenges, because the complaint is a public record. (D.I. 88 at 11)(citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196-97 (3d Cir. 1993)*). However, the cases that have allowed consideration of public records involved Rule 12(b)(6) motions to dismiss, and the Court concludes that to allow consideration of public records on a Rule 12(b)(1) facial challenge would be to disregard the facial challenge/factual challenge distinction. See *Gould, 220 F.3d at 176 n.6* (extending Pension Benefit to allow consideration of documents attached to a complaint when deciding a Rule 12(b)(1) facial attack, but not discussing whether or not it would also allow consideration of public records); *Bell Atl.-Pa., Inc. v. Pennsylvania Pub. Util. Comm'n, 107 F. Supp. 2d 653, 658-59 (E.D. Pa. 2000)*(discussing how Courts can consider public records when analyzing Rule 12(b)(6) motions to dismiss, but recognizing that Rule 12(b)(1) motions [*13] to dismiss are analyzed under a different standard than Rule 12(b)(6) motions, and further, that can courts can consider documents outside the pleadings when analyzing Rule 12(b)(1) motions only if the motion presents a factual challenge). n3

> n3 One court has held that public records can be considered by a court in deciding a Rule 12(b)(1) facial challenge. *Hunter v. United States, 2000 U.S. Dist. LEXIS 20206, 2000 WL 1880257, at *3 (M.D. Pa. Dec. 15, 2000)*. The

court noted that, when discussing what materials may be considered by a court in determining a Rule 12(b)(1) facial challenge, the Gould court cited Pension Benefit, which involved a Rule 12(b)(6) motion. Id. Since the Pension Benefit court allowed consideration of public records, the court in Hunter reasoned that Gould implicitly allows for the consideration of public records when deciding a Rule 12(b)(1) facial attack. Id. The court reasoned that this conclusion "comports with the fact that both a Rule 12(b)(6) motion and a Rule 12(b)(1) facial attack argue that the propriety of dismissal is apparent from the face of the complaint." Id.

The Court concludes that the reasoning in Hunter is not helpful for two reasons. First, the Court believes Hunter inaccurately characterizes the Gould court's citation of Pension Benefit. Gould merely cited Pension Benefit for the proposition that the Third Circuit could "think of no principled reason why a court, in resolving a 12(b)(1) facial attack should not also consider documents attached to the complaint." *Gould, 220 F.3d at 176 n.6* (emphasis added). Gould did not hold that public records can be considered in resolving a Rule 12(b)(1) facial challenge. Second, even if Gould had intended to suggest that public records could be considered in resolving a Rule 12(b)(1) facial attack, the Court concludes that the instant circumstances present a "principled reason" why they should not be considered. Plaintiffs hope to avoid dismissal on jurisdictional grounds by relying on public records, but Plaintiffs also do not want to be "bound" by the allegations in the public records for other issues, such as damages. It would be unfair to Defendants to allow Plaintiffs to rely on public records for purposes of jurisdiction, yet avoid having to plead the same facts in their Complaint because they may adversely affect other issues in the case.

[*14]

Plaintiffs also contend that the Court should deny Defendants' motions because (1) it would be an abuse of discretion to rule on the jurisdictional issue without affording them an opportunity to conduct jurisdictional discovery, and (2) the decision resolving the jurisdictional issue should be postponed until trial because the jurisdictional issue is so intertwined with the merits of the case. (D.I. 88 at 13-16). As to Plaintiffs' first contention, because the Court concludes that Plaintiffs' Amended Complaint is facially deficient, the

2001 U.S. Dist. LEXIS 12535, *

deficiency could not be cured by discovery. As to Plaintiffs' second contention, the Court concludes that it would be inappropriate to accept jurisdiction and consider the case on its merits where the challenge to the Court's jurisdiction is facial in nature. See *Society Hill Towers Owners', Ass'n v. Rendell, 210 F 3d 168, 175 (3d Cir. 2000)*(noting that the Supreme Court "has recently cautioned against the practice of assuming jurisdiction and reaching the merits of a dispute," because issuing a decision based on such "hypothetical jurisdiction" is essentially an advisory opinion)(quoting *Steel Co. v. Citizens for Better Env't, 523 US 83, 93, 140 L. Ed 2d 210, 118 S. Ct. 1003 (1998))*. [*15]

In sum, the Court concludes that Plaintiffs fail to meet their burden to affirmatively plead facts necessary to establish the basis of the Court's jurisdiction. Thus, the Court concludes that Defendants' motions should be granted.

## CONCLUSION

For the reasons discussed, the Court will grant Defendants' motions to dismiss for lack of **subject matter jurisdiction.**

An appropriate Order will be entered.

## ORDER

At Wilmington this 14 day of August, 2001, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. Defendants Douglas H. Wolf's and Richard G Buckingham's Motion to Dismiss for Lack of Diversity Jurisdiction (D.I. 75) is **GRANTED.**

2. Defendant W. Lawrence Patrick's Motion to Dismiss (D.I. 79) is **GRANTED.**

3. Motion of Defendants Wolf and Buckingham to Compel Discovery (D.I. 73) is **DENIED AS MOOT.**

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE

# EXHIBIT D

90 Fed. Appx. 616, *; 2004 U.S. App. LEXIS 1008, **;

70 U.S.P.Q.2D (BNA) 1250

11 of 139 DOCUMENTS

J&D HOME IMPROVEMENT, INC., Appellant v. BASEMENT DOCTOR, INC.

No. 03-1902

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

*90 Fed. Appx. 616; 2004 U.S. App. LEXIS 1008; 70 U.S.P.Q.2D (BNA) 1250*

January 8, 2004, Submitted Under Third Circuit LAR 34.1(a)
January 22, 2004, Opinion Filed

**NOTICE:** [**1] RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE. D.C. Civil No. 02-cv-01275. District Judge: The Honorable Sue L. Robinson.

*J&D Home Improvement, Inc. v. Basement Doctor, Inc., 247 F. Supp. 2d 575, 2003 U.S. Dist. LEXIS 2944 (D. Del., 2003)*

**DISPOSITION:** Affirmed.

LexisNexis(R) Headnotes

**COUNSEL:** For J&D Home Improvement, Appellant: Chad M. Shandler, Richards, Layton & Finger, Wilmington, DE. Robert G. Schuler, Kegler, Brown, Hill & Ritter, Columbus, OH.

For Basement Doctor, Inc, Appellee: Stanley H. Cohen, Caesar, Rivise, Bernstein, Cohen & Pokotilow, Philadelphia, PA.

**JUDGES:** Before: BARRY, SMITH, Circuit Judges, and POLLAK, * District Judge.

* The Honorable Louis H. Pollak, District Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

**OPINIONBY:** Maryanne Trump Barry

**OPINION:** [*616] BARRY, Circuit Judge

This appeal asks us to determine whether a federal District Court has **subject matter jurisdiction** over a declaratory judgment action asking the Court to declare, pursuant to *15 U.S.C. § 1052(d)*, that both plaintiff and defendant are entitled to concurrent use trademark registrations. [**2] The District Court held that it did not have **subject matter jurisdiction**. We agree, and will affirm.

I.

Appellant J&D Home Improvement, Inc. ("J&D") has been in the business of providing basement waterproofing, foundation support, and concrete restoration services since 1939. J&D began using the [*617] mark THE BASEMENT DOCTOR in the Midwest, unaware that appellee Basement Doctor, Inc. ("Basement Doctor") was using the mark BASEMENT DOCTOR in a different geographical area. On September 1, 1998, J&D applied for federal registration of the mark THE BASEMENT DOCTOR. On November 16, 1999, the United States Patent and Trademark Office ("PTO") issued Registration No. 2,292,578 to J&D for THE BASEMENT DOCTOR. On July 24, 2000, Basement Doctor applied for federal registration of the mark BASEMENT DOCTOR. That application was rejected.

On July 17, 2001, Basement Doctor initiated a proceeding before the Trademark Trial and Appeal Board ("TTAB") seeking cancellation of J&D's registration, under *Section 2(d) of the Lanham Act*, based upon priority of use. Basement Doctor alleged that it was the senior user because its predecessor-in-interest was using BASEMENT DOCTOR as a service mark prior to

90 Fed. Appx. 616, *; 2004 U.S. App. LEXIS 1008, **;

70 U.S.P.Q.2D (BNA) 1250

[**3] J&D's first use of THE BASEMENT DOCTOR. In October 2001, J&D filed an answer in the TTAB proceeding.

On July 8, 2002, J&D filed a complaint against Basement Doctor for a declaratory judgment in the U.S. District Court for the District of Delaware, asking the Court to declare (1) that J&D is entitled to a concurrent use registration for the mark THE BASEMENT DOCTOR for the entire country, except those areas in which Basement Doctor is able to demonstrate actual use of the mark as of J&D's filing of its registration; or (2) that J&D's registered mark for THE BASEMENT DOCTOR is valid and prima facie evidence of its right to use that mark. On July 26, 2002, Basement Doctor moved to dismiss J&D's complaint, pursuant to *FED. R. CIV. P. 12(b)(1)*, on the ground that the District Court lacked **subject matter jurisdiction** because the PTO had primary jurisdiction over J&D's concurrent use claim. The TTAB stayed the cancellation proceeding pending resolution of this action.

On February 23, 2003, the District Court granted Basement Doctor's motion to dismiss J&D's complaint. The Court held that J&D had not pled the existence of an actual controversy that [**4] would permit jurisdiction over an action under the *Declaratory Judgment Act*, and that *15 U.S.C. § 1052(d)* was not a grant of original jurisdiction. J&D now appeals. We have jurisdiction under *28 U.S.C. § 1291*.

**II.**

Our review of the District Court's order granting the motion to dismiss for lack of **subject matter jurisdiction** is plenary. See, e.g., *Turicentro, S.A. v. American Airlines Inc.*, 303 F.3d 293, 300 (3d Cir. 2002) (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). In a *Rule 12(b)(1)* appeal, "'we review only whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court.'" *Turicentro*, 303 F.3d at 300 (quoting *Licata v. United States Postal Serv.*, 33 F.3d 259, 260 (3d Cir. 1994)). "Challenges to **subject matter jurisdiction** under *Rule 12(b)(1)* may be 'facial' or 'factual.' 'Facial attacks, like this one, contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true." *Turicentro*, 303 F.3d at 300, n. 4 [**5] (citing *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 n. 7 (3d Cir. 2001)). Our review of a dismissal because a claim is not ripe is also plenary. *NE Hub Partners*, 239 F.3d at 341 (3d Cir. 2001) (citing *Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319, 321 (3d Cir 1998); and *Gould Elecs.*, 220 F.3d at 176).

Section 2(d) of the Lanham Act provides that the Director of the PTO may [*618] issue concurrent use registrations either based upon the Director's own determinations or "when a court of competent jurisdiction has finally determined that more than one person is entitled to use the same or similar marks in commerce." n1 *15 U.S.C. § 1052(d)*; see also*Enterprises Rent-A-Car Co. v. Advantage Rent-A-Car, Inc.*, 330 F.3d 1333, 1339 (Fed. Cir. 2003), cert. denied*157 L. Ed. 2d 794, 124 S. Ct. 958, 2003 WL 22327301 (2003)*. J&D argues that the District Court had **subject matter jurisdiction** over the *§ 1052(d)* claim asserted in this case because *15 U.S.C. § 1121(a)* states that district courts "shall have original jurisdiction [**6] ... of all actions arising under [Chapter 22: Trademarks]," and because, they claim, *§ 1052(d)* authorizes a *§ 1121(a)* "action." The District Court held, and Basement Doctor argues, that *§ 1052(d)* authorizes a remedy only, not a *§ 1121(a)* "action," and, therefore, **subject matter jurisdiction** cannot be based on that statute.

>    n1 A court does not itself cause the concurrent use registration to be issued; rather, it determines whether both parties are entitled to use the mark(s), and the PTO Director then issues the concurrent use registrations. See, e.g., *Sears, Roebuck & Co. v. Sears Realty Co.*, 1993 U.S. Dist. LEXIS 9513, 30 U.S.P.Q. 2d 1219, 1225 (N. D.N.Y. 1993).

We agree with the District Court, which noted that when Congress wanted to create an "action" under the Lanham Act, it clearly did so. n2 No such unambiguous language is found in *§ 1052(d)*. n3 Therefore, although a court may determine that concurrent [*619] registration is appropriate (and thereby direct the PTO to issue concurrent [**7] registrations), it may only do so in the context of actions over which courts already have **subject matter jurisdiction** on some other basis. n4 See, e.g., *Old Dutch Foods, Inc. v. DanDee Pretzel & Potato Chip Co.*, 477 F.2d 150, 155-56 (6th Cir. 1973) (jurisdiction in infringement action over counterclaimant's seeking concurrent use registration); *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 365-66 (11th Cir. 1997) (affirming District Court's concurrent use findings in a *15 U.S.C. § 1125(a)* false designation of origin case). n5

>    n2 See, e.g., *15 U.S.C. § 1114(1)* (any person using or reproducing a registered mark without authorization "shall be liable in a civil

90 Fed. Appx. 616, *; 2004 U.S. App. LEXIS 1008, **;

70 U.S.P.Q.2D (BNA) 1250

action by the registrant"); *15 U S C § 1120* (any person who obtains a registration by false or fraudulent means "shall be liable in a civil action"); *15 U.S.C. § 1125(a)(1)* (any person using false designations of origin likely to cause confusion "shall be liable in a civil action"); *15 U.S.C. § 1129(1)* (any person who uses another's name, without permission and for profit, in an internet domain name "shall be liable in a civil action"); *15 U.S.C. § 1071(b)* (authorizing applicants unsatisfied with TTAB decisions to "have a remedy by a civil action"). [**8]

n3 The full text of *§ 1052(d)* states as follows:

No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it .... (d) Consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive: Provided, That if the Director determines that confusion, mistake, or deception is not likely to result from the continued use by more than one person of the same or similar marks under conditions and limitations as to the mode or place of use of the marks or the goods on or in connection with which such marks are used, concurrent registrations may be issued to such persons when they have become entitled to use such marks as a result of their concurrent lawful use in commerce prior to (1) the earliest of the filing dates of the applications pending or of any registration issued under this chapter; (2) July 5, 1947, in the

case of registrations previously issued under the Act of March 3, 1881, or February 20, 1905, and continuing in full force and effect on that date; or (3) July 5, 1947, in the case of applications filed under the Act of February 20, 1905, and registered after July 5, 1947. Use prior to the filing date of any pending application or a registration shall not be required when the owner of such application or registration consents to the grant of a concurrent registration to the applicant. Concurrent registrations may also be issued by the Director when a court of competent jurisdiction has finally determined that more than one person is entitled to use the same or similar marks in commerce. In issuing concurrent registrations, the Director shall prescribe conditions and limitations as to the mode or place of use of the mark or the goods on or in connection with which such mark is registered to the respective persons.

*15 U.S.C. § 1052(d)* (emphasis added). [**9]

n4 At least one treatise has suggested, albeit implicitly, that a plaintiff can bring a civil action for concurrent use registration. See TRADEMARK REGISTRATION PRACTICE § 11: 4, 2d ed. (2003). It notes that *§ 1052(d)* places certain constraints on the Director of the PTO (e.g. finding that the junior user began its use prior to filing of the senior user's application, and that no confusion will result from the concurrent uses) that it does not place on the courts, and suggests that it might be advantageous for a plaintiff to pursue concurrent use registration in the courts for this reason. Courts have recognized their freedom from these constraints, though not as a basis for concluding that jurisdiction is thereby conferred, see, e.g., *Holiday Inn v. Holiday Inns, Inc., 534 F.2d 312, 318 (C C.P.A. 1976)*, as has the Trademark Manual of Examining Procedure ("TMEP"). See TMEP § 1207.04(F). J&D argues that this

90 Fed. Appx. 616, *; 2004 U.S. App. LEXIS 1008, **;

70 U.S.P.Q.2D (BNA) 1250

distinction conveys Congress's intent that § 1052(d) confers jurisdiction. Although we acknowledge that § 1052(d) places constraints on the Director that it does not place on courts, and that circumstances may arise whereby these constraints might prevent an applicant from receiving concurrent use registration, we do not believe that this distinction indicates that Congress intended to authorize § 1121(a) "actions" based solely on an attempt to acquire concurrent use registrations pursuant to § 1052(d). [**10]

n5 Congress's decision to include "court of competent jurisdiction" in § 1052(d), which is echoed in the PTO regulations governing concurrent use registrations, see 37 C.F.R. § 2.99(f), further supports our interpretation because it suggests that a court must have some other basis for its jurisdiction before ruling on whether the parties are entitled to use the disputed mark(s) concurrently.

Neither can J&D predicate **subject matter jurisdiction** on the relief sought under the Declaratory Judgment Act. That Act empowers district courts to "declare the rights and other legal relations of any interested party seeking such declarations," but only "in a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a) (emphasis added). J&D's complaint fails to state an actual controversy, much less one within the Court's jurisdiction.

"The existence of a case and controversy is a prerequisite to all federal actions, including those for declaratory relief." *Peachlum v. City of York, Pennsylvania*, 333 F.3d 429, 433 (3d Cir. 2003) [**11] (quoting *Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994)). "The question in each case is whether the facts alleged show that there is a substantial controversy, between parties having adverse legal interests, 'of sufficient immediacy and reality' to justify judicial resolution." *Peachlum*, 333 F.3d at 434 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 85 L. Ed. 826, 61 S. Ct. 510 (1941)).

J&D asks for relief in anticipation of the TTAB's ruling in its cancellation proceeding. That proceeding, i.e. the dispute over which party is entitled to registration

of its respective mark, has been stayed pending the conclusion of this case. The TTAB will determine whether J&D is entitled to keep its registration for THE BASEMENT DOCTOR. If not, it may then utilize the PTO procedures for applying for concurrent use registration of its [*620] mark. See 37 C.F.R. § 2.99(a)-(e). No actual controversy exists now, however, because the registration for J&D's mark is valid, because no competing mark has been registered by Basement Doctor, and because no infringement [**12] claims have been made. Because no controversy exists, the District Court did not have jurisdiction over J&D's declaratory judgment action. n6

n6 Courts in other jurisdictions facing similar questions have reached the same conclusion. See, e.g., *Red Lobster Inns of America, Inc. v. New England Oyster House, Inc.*, 524 F.2d 968, 969 (5th Cir. 1975) (no jurisdiction over a declaratory judgment action seeking determination that no conflict existed between parties' marks because "opposition proceedings before the [PTO] did not constitute a claim of infringement and therefore did not present an actual controversy as required by the *Declaratory Judgment Act*"); *Chicago Cosmetologists Ass'n, Inc. v National Cosmetology Ass'n, Inc.*, 1993 U.S. Dist. LEXIS 6870, No. 92 C 4627, 1993 WL 177027, at *3 (N. D. Ill. May 21, 1993) ("The mere filing of a statutory notice of opposition to the registration of a service mark, however, does not by itself create an actual case or controversy between the parties which is justiciable by a federal court because opposition proceedings do not constitute claims of infringement, misuse, or unfair competition ... This is true even when the PTO has suspended proceedings pending the outcome of the district court action.") (internal quotations omitted).

[**13]

Moreover, as discussed above, the District Court did not have jurisdiction to declare the parties' rights to concurrent registration because that remedy, authorized by § 1052(d), is not a § 1121(a) "action."

The order of the District Court will be affirmed.

/s/Maryanne Trump Barry

Circuit Judge

EXHIBIT  E

111 of 139 DOCUMENTS

**H. DIANA KOPICKO, Plaintiff, v. DEPARTMENT OF SERVICES FOR CHILDREN, YOUTH AND THEIR FAMILIES, Defendant.**

Civil Action No. 03-1172-KAJ

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2004 U.S. Dist. LEXIS 16130*

August 13, 2004, Decided

**PRIOR HISTORY:** *Kopicko v. State, 2004 Del. LEXIS 248 (Del., May 28, 2004)*

**DISPOSITION:** [*1] Defendant's motion to dismiss granted; plaintiff's motions denied as moot.

**LexisNexis(R) Headnotes**

**COUNSEL:** H. DIANA KOPICKO, plaintiff, Pro se, Frederica, DE.

For DEPARTMENT OF SERVICES FOR CHILDREN, YOUTH AND THEIR FAMILIES, defendant: Ilona M. Kirshon, Department of Justice, Wilmington, DE.

**JUDGES:** Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Kent A. Jordan

**OPINION:**

MEMORANDUM ORDER

I. INTRODUCTION

Before me are several motions filed by the plaintiff, H. Diana Kopicko, and a motion to dismiss (Docket Item ["D.I."] 12) filed by the defendant, the State of Delaware's Division of Services for Children, Youth and Their Families ("DSCYF" or the "State"). The plaintiff's motions consist of two motions for leave to amend the complaint (D.I. 3, 9) and three motions for appointment of counsel (D.I. 16, 21, 27). n1 For the reasons that follow, the plaintiff's motions are denied, and the defendant's motion is granted.

n1 The plaintiff also filed a motion for an extension of time to file a brief in response to the State's motion to dismiss (D.I. 20), which was in effect granted. The plaintiff filed her answering brief (D.I. 23) on July 30, 2004.

[*2]

II. BACKGROUND

The plaintiff has experience working as a rape counselor and as a social worker with a background in crisis intervention and interviewing victims of sexual abuse. (*See* D.I. 23 at 1.) She was hired by the State in May of 1997 as a "Casual Seasonal Senior Family Services Specialist". (*Id.* at 4.) Later, in July of 1997, the plaintiff was hired as a full-time merit employee of DSCYF. (*Id.* at 5.) Apparently there was a probationary period at the outset of the employment relationship. (*See* D.I. 13 at P10.) Within that probationary period, on December 31, 1997, the State terminated her employment. (*See* D.I. 23 at 6.)

In her complaint the plaintiff alleges she was "fired because she questioned her supervisor's decisions that left children at risk." (D.I. 1) Since her firing, the plaintiff has vigorously pursued a claim for wrongful termination through the State's administrative agency and court systems. As related by the defendant in its motion to dismiss,

> [The plaintiff] presented her case before the State Merit Employee Relations Board, ("MERB") which held two days of

hearings, taking testimony from six witnesses and admitting 32 documents [*3] into evidence. The MERB upheld DSCYF's action in terminating plaintiff's employment, finding that the reasons for the termination of plaintiff during her probationary employment were all merit as opposed to non-merit factors and that they formed a reasonable basis for the determination that the performance during the probationary period had been unsatisfactory. (MERB Decision attached as part of Exhibit B.) Plaintiff appealed the MERB decision to the Superior Court, where President Judge Ridgely upheld the MERB Decision on the basis of the well-developed record below, finding no error of law and that there was substantial evidence on the record to support the Board's conclusion that plaintiff was not terminated for impermissible non-merit factors. *Kopicko v. Delaware Dept. of Services for Children, 2003 Del. Super. LEXIS 282, 2003 WL 21976409 (Del. Super. 2003). ... That decision was appealed to the Delaware Supreme Court, which likewise affirmed the MERB decision, indicating that after "having carefully considered the parties' briefs and the record below, we conclude that the MERB's decision is supported by substantial evidence and is free from legal error." [*4] *Kopicko v State Dept. of Services for Children, Youth and their Families, 2004 Del. LEXIS 248, 2004 WL 691901 (Unpublished Decision)*(Del. 2004).

(D.I. 13 at P10.)

Plaintiff also sued DSCYF in the Delaware Superior Court, challenging her dismissal as a breach of the implied covenant of good faith and fair dealing. *See Kopicko v. Delaware*, No. 521, 2000 (Del. May 28, 2004) (Attached to D.I. 14; referred to herein as "Supreme Court Order"). The Superior Court granted summary judgment to the defendant, holding that sovereign immunity barred the plaintiff's claims. *Kopicko v. Department of Servs for Children, Youth & Their Families, 2000 Del. Super LEXIS 396, 2000 WL 33108936 (Del. Super)* The Supreme Court stayed proceedings in the appeal to allow the plaintiff an opportunity to exhaust her administrative remedies, *Kopicko v. Dep't of Servs for Children, Youth & Their*

*Families, 805 A.2d 877 (Del. 2002)*, which she did as outlined above. The Supreme Court later dismissed that appeal on the basis of collateral estoppel and lack of subject matter jurisdiction of the suit originally in the Superior Court. (*See* Supreme Court Order at P5.)

Plaintiff evidently decided to open yet another litigation front against the defendant by filing the present action in December of 2003, alleging essentially the same [*5] dissatisfaction with the DSCYF's decision to terminate her, but couching it in the language of a claim under the "U.S. *Whistle Blower Protection Act*". Defendant has also filed two motions for leave to amend her complaint (D.I. 3, 9), in which she alters certain of her allegations about "discriminatory practice" and about the relief she seeks, but she continues to base her claim upon the "U.S. *Whistle Blower Protection Act*".

After some fits and starts with the service of the complaint, the State filed its motion to dismiss pursuant to *Federal Rule of Civil Procedure 12(b)* (D.I. 12). The motion cites a variety of reasons for dismissing the action, including lack of subject matter jurisdiction, the statute of limitations, insufficiency of service of process, *Eleventh Amendment* immunity, sovereign immunity, and collateral estoppel and *res judicata*. The defendant's motion and supporting memorandum of points and authorities was filed on May 13. No response was forthcoming from the plaintiff until I issued an order on July 15, 2004 stating that the plaintiff would have to file an answering brief on or before July 30, 2004, or otherwise show cause [*6] why the case should not be dismissed for failure to prosecute. (D.I. 15.) Five days later, the plaintiff filed a motion for appointment of counsel (D.I. 16) which is opposed by the State (D.I. 18). n2 In addition, however, the plaintiff has filed an answering brief to the motion to dismiss filed by the State (D.I. 23). Thus, I presently have before me the plaintiff's motion for appointment of counsel and the defendant's motion to dismiss.

n2 As previously noted, *supra* at 1, the plaintiff has filed two additional motions seeking the same relief. (D.I. 21, 27.)

III. STANDARDS

The State has moved to dismiss the Complaint under *Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6)*. A challenge under *Rule 12(b)(1)* to subject matter jurisdiction in a case requires the court to ask "whether the complaint alleges facts on its face which, if taken as true, would be sufficient to invoke the district court's

2004 U.S. Dist. LEXIS 16130, *

jurisdiction." *FOCUS v Allegheny County Court of Common Pleas, 75 F 3d 834, 840 (3d Cir. 1996).* [*7] Under *Rule 12(b)(6)*, a motion to dismiss a complaint for failure to state a claim can only be granted if, "taking the allegations of the complaint as true, and liberally giving the plaintiff the benefit of all inferences that may be drawn therefrom, it appears beyond doubt that the plaintiff can prove no set of facts upon which relief could be granted." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F 2d 173, 175 (3d Cir. 1988).* The moving parties bear the burden of persuasion. *See Kehr Packages, Inc v. Fidelcor, Inc., 926 F 2d 1406, 1409 (3d Cir.1991); Locklear v. Remington, 2003 U.S. Dist. LEXIS 7592, 2003 WL 21003722 at *1 (D. Del. 2003).* However, "the pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)* (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 340 (2d ed. 1990)). The Court need not "accept legal conclusions either alleged or inferred from the pleaded facts." *Id* (quoting *Mescall v. Burrus, 603 F.2d 1266, 1269 (7th Cir.1979)).* [*8]

## IV. DISCUSSION

The State aptly notes that the plaintiff has nowhere identified the jurisdictional basis for her complaint. She cites what she calls the "U.S. *Whistle Blower Protection Act*", but gives no statutory reference. The only statute that appears to fit what the plaintiff is trying to get at is the *Whistle-Blower Protection Act of 1989*, Pub.L. 101-12 (codified at various sections of Title 5 of the United State Code). However, that statute does not cover state employees. Rather, it is designed to protect federal employees. *See 5 U.S.C. § 2105* (defining "an employee" for purposes of Title 5 as including people in

federal civil service, or someone subject to the supervision of a federal civil servant, or someone "engaged in the performance of a Federal function" under a law or Executive act). Indeed, in passing that act, Congress noted that it wanted to "strengthen and improve protection for the rights of Federal employees ... ." *See* Public Law 101-12, April 10, 1989, 103 Stat 16 (set forth in note to *5 U.S.C. § 1201*). I am thus compelled to conclude that, as the State contends, the complaint contains no basis for this [*9] court to exercise jurisdiction in this matter. The amendments the plaintiff seeks to make to her complaint do not correct the jurisdictional defect in any respect and are therefore immaterial to that conclusion. The complaint must therefore be dismissed, and the motions to amend the complaint and for appointment of counsel must be denied as moot. n3

> n3 Because I conclude that the challenge to **subject matter jurisdiction** is dispositive, I need not address the remaining arguments for dismissal advanced by the defendant.

## V. CONCLUSION

Accordingly, it is hereby ORDERED that the defendant's motion to dismiss (D.I. 12) is GRANTED, and the plaintiff's motions to amend the complaint (D.I. 3, 9) and for appointment of counsel (D.I. 16, 21, 27) are DENIED as moot.

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

August 13, 2004
Wilmington, Delaware